# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ) | |
| IN RE LIBOR-BASED FINANCIAL ) | MDL No. 2262 |
| INSTRUMENTS ANTITRUST LITIGATION ) | Master File No. 1:11-md-02262-NRB |
| ) | ECF Case |
| ) | |
| THIS DOCUMENT RELATES TO: ) | |
| Case No. 12-CV-1025 (NRB) ) | **ORAL ARGUMENT REQUESTED** |
| ) | |

**MEMORANDUM IN SUPPORT OF BONDHOLDER PLAINTIFFS' MOTION FOR (1) PRELIMINARY APPROVAL OF SETTLEMENTS WITH BARCLAYS BANK PLC, UBS AG, AND HSBC BANK PLC, (2) CONDITIONAL CERTIFICATION OF THE BOND-HOLDER SETTLEMENT CLASS, AND (3) APPOINTMENT OF SETTLEMENT CLASS COUNSEL**

Karen L. Morris (Bar No. 1939701)
Patrick F. Morris
R. Michael Lindsey
MORRIS AND MORRIS LLC
    COUNSELORS AT LAW
4023 Kennett Pike, # 254
Wilmington, DE  19807
Tele: (302) 426-0400
Email: *kmorris@morrisandmorrislaw.com*
        *pmorris@morrisandmorrislaw.com*
        *rmlindsey@morrisandmorrislaw.com*

David H. Weinstein
Robert S. Kitchenoff
WEINSTEIN KITCHENOFF & ASHER LLC
100 South Broad Street, Suite 705
Philadelphia, PA  19110
Tele: (215) 545-7200      Fax: (215) 545-6535
Email: *weinstein@wka-law.com*
        *kitchenoff@wka-law.com*

*Attorneys for Plaintiffs*
*Ellen Gelboim and Linda Zacher*

<u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION.................................................................................................1

II.     THE SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED ........................1

        A.      THE STANDARD FOR PRELIMINARY APPROVAL........................................1

        B.      THE SETTLEMENTS ARE PRESUMED TO BE FAIR ....................................3

        C.      THE SETTLEMENTS ARE FAIR AND REASONABLE UNDER
                RELEVANT *GRINNELL* FACTORS ...........................................................4

                1.      The Complexity, Expense, and Likely Duration of the Litigation............5

                2.      The Reaction of the Class to the Settlement....................................6

                3.      The Stage of the Proceedings ......................................................7

                4.      The Risks of Establishing Liability and Damages..............................8

                5.      The Risks of Maintaining the Class Action through Trial....................10

                6.      The Ability of Defendants to Withstand a Greater Judgment ................10

                7.      The Reasonableness of the Settlement in Light of the Best Possible
                        Recovery and the Attendant Risks of Litigation ........................11

III.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED AND
        SETTLEMENT CLASS COUNSEL APPOINTED ....................................................13

        A.      RULE 23(a) REQUIREMENTS ................................................................14

                1.      Rule 23(a)(1) – Numerosity ......................................................14

                2.      Rule 23(a)(2) – Commonality....................................................15

                3.      Rule 23(a)(3) – Typicality.......................................................16

                4.      Rule 23(a)(4) – Adequacy .......................................................17

        B.      RULE 23(b)(3) REQUIREMENTS ...........................................................18

                1.      Predominance .....................................................................18

                2.      Superiority..........................................................................20

C.      THE COURT SHOULD APPOINT BONDHOLDER PLAINTIFFS' COUNSEL AS COUNSEL FOR THE SETTLEMENT CLASS.........................21

IV.     PLAINTIFFS WILL FILE A SEPARATE MOTION FOR APPROVAL OF A NOTICE PLAN AND PLAN OF ALLOCATION ...............................................22

V.      CONCLUSION .................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

*Air Cargo Servs. Antitrust Litig.*, No. 06–MD–1175 (JG) (VVP), 2014 U.S. Dist.
WL 7882100 (E.D.N.Y. Oct. 15, 2014)..................................................................18

*Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2011 U.S. Dist. WL 1706778
(D. Vt. May 4, 2011)...............................................................................................3

*Am. Int'l Grp. Secs. Litig.,* 689 F.3d 229 (2d Cir. 2012) ...............................................19

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).......................................13, 14, 18, 20

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000) .................16

*Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002).......................16

*Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345 (E.D.N.Y. 2006).......................................14

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)..................................................................18

*Capsolas v. Pasta Res. Inc.*, No. 10-CV-5595 RLE, 2012 U.S. Dist. WL 1656920
(S.D.N.Y. May 9, 2012) ...........................................................................................4

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW),
1987 U.S. Dist. WL 7030 (S.D.N.Y. Feb. 13, 1987).................................................9

*Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179 (S.D.N.Y. 2012) ...................9

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ...................................4, 5, 11

*Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153 (E.D.N.Y. 2009)............................13

*Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013)..........................................................10

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ...............................14

*Dial Corp. v. News Corp.*, 314 F.R.D. 108 (S.D.N.Y. 2015) .........................................19

*Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574
(S.D.N.Y. Sept. 9, 2015)...........................................................................................10

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005).....................................10

*Gelboim v. Bank of Am. Corp.*, — U.S. —, 134 S.Ct. 2876, 189 L.Ed.2d 832 (Mem. 2014) ..............5

*Gelboim v. Bank of Am. Corp.*, — U.S. —, 135 S.Ct. 897, 190 L.Ed.2d 789 (2015) ..........................5

*Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016 ......................................................5

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ...................................................16

*In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984) ................................11

*In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 U.S. Dist. WL 903236
    (S.D.N.Y. Apr. 6, 2006)......................................................................................7, 11

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) .....................3

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259
    (S.D.N.Y. 2012) ...............................................................................................11

*In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322 (5th Cir. 1981) ................................11

*In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555 (S.D.N.Y. 2004) .....................20

*In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100 (S.D.N.Y. 2010) ...........................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009)...................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 U.S. Dist. WL
    4537550 (S.D.N.Y. Nov. 8, 2010) .............................................................................4

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789-LGS,
    2015 U.S. Dist. LEXIS 175877 (S.D.N.Y.  Dec. 15, 2015) ...................................................22

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)...........................7, 14

*In re Ind. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476 (S.D.N.Y. 2002) ..............................14

*In re Initial Public Offering Sec. Litig.*, 260 F.R.D. 81 (S.D.N.Y. 2009)...............................14

*In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92 (D.N.J. 2012).......................................19

*In re Ivan F. Boesky Securities Litigation*, 948 F.2d 1358 (2d Cir. 1991) ..................................2

*In re LIBOR-Based Fin. Instr. Antitrust Litig.*, No. 11-md-02262-NRB, 2016 U.S Dist.
    WL 7378790 (S.D.N.Y. 2016) ...............................................................................5

*In re LIBOR-Based Fin. Instr. Antitrust Litig.*, No. 13–3565 (L), 2013 WL 9557843
    (2d Cir. Oct. 3, 2013) ......................................................................................5

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, Nos. 11 MDL 2262 (NRB),
   11 Civ. 2613 (NRB), 2014 U.S. Dist. WL 6851096 (S.D.N.Y. Dec. 2, 2014)...........2, 3, 6, 22

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996) ............................17

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) ...........................1, 2

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) .............6, 9, 11

*In re PaineWebber Ltd. P'ships. Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)........................................2, 3

*In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231 (E.D.N.Y. 1998)..................................................16

*In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995)............................4, 15

*In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474 (2d Cir. 2008)..............................................18

*In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT),
   2014 U.S. Dist. WL 5819921 (E.D.N.Y. Nov. 10, 2014)..................................................10

*In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 CIV 0962 (RCC),
   2005 U.S. Dist. WL 1635158 (S.D.N.Y. July 8, 2005) ............................................................1

*In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 U.S. Dist. WL 2944620
   (S.D.N.Y. July 31, 2008) .........................................................................................................8

*In re Traffic Exec. Ass'n-E.R.R.s,* 627 F.2d 631 (2d Cir. 1980) .............................................................2

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)....................................18

*In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 U.S. Dist. WL 5289514
   (E.D.N.Y. Oct. 23, 2012).........................................................................................................5

*Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191 (E.D.N.Y. 2006)...................................................17

*Long v. HSBC USA Inc.*, No. 14 Civ. 6233 (HBP), 2015 U.S. Dist. WL 5444651
   (S.D.N.Y. Sept. 11, 2015)..........................................................................................................3

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y. 1998).........................................................17

*MCI Commc'ns. Corp. v. Am. Tel. & Telegraph Co.*, 708 F.2d 1081 (7th Cir. 1983) ...................9

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009) ............................................................2

*Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80 (D. Conn. 2010)................................................................2

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2014) ...................................19

*Park v. Thomson Corp.*, No. 05 CIV. 2931 (WHP), 2008 U.S. Dist. WL 84551
    (S.D.N.Y. Oct. 22, 2008) .................................................................................................9

*Precision Associates, Inc. v. Panalpina World Transport*, No. 08-cv-0042 (JJG)
    (E.D.N.Y.) ....................................................................................................................22

*Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283 (3d Cir. 1998) ................................18

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) .......................4, 6

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ..............................................................16

*Seijas v. Republic of Arg.*, 606 F.3d 53 (2d Cir. 2010) ....................................................20

*Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34 (S.D.N.Y. 1977) .......................................18

*Tart v. Lions Gate Entertainment Corp.*, No. 14–CV–8004 (AJN), 2015 U.S. Dist.
    WL 5945846 (S.D.N.Y. Oct. 13, 2015) .................................................................................2

*U.S. Football League v. Nat'l Football League*, 644 F. Supp. 1040 (S.D.N.Y. 1986) ....................9

*Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256 (2d Cir. 2001) ..................................5

*Vitamin C Antitrust Litig.*, 279 F.R.D. 90 (E.D.N.Y. 2012) ..................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ..............................................3, 10

*Weil v. Long Island Sav. Bank*, 200 F.R.D. 164 (E.D.N.Y. 2001) ...........................................14

*Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713 (E.D.N.Y. 1989) ..............................................5

## **RULES**

Fed. R. Civ. P. 23(a) ...............................................................................................................13

Fed. R. Civ. P. 23(a)(1) ............................................................................................................14

Fed. R. Civ. P. 23(a)(4) ............................................................................................................16

Fed. R. Civ. P. 23(b) ................................................................................................................13

Fed. R. Civ. P. 23(b)(3) ...................................................................................................17, 18, 19, 20

Fed. R. Civ. P. 23(g) ................................................................................................................20

## I.     <u>INTRODUCTION</u>

Bondholder plaintiffs Ellen Gelboim and Linda Zacher ("Bondholder Plaintiffs"), by their at-
torneys ("Bondholder Plaintiffs' Counsel"), submit this memorandum in support of their motion for
preliminary approval of three settlements (collectively, the "Settlements") in the above-captioned
litigation (the "Bondholder Action"), reached between Bondholder Plaintiffs, on behalf of them-
selves and the settlement class described below, and the following defendants, respectively: (i) Bar-
clays Bank plc ("Barclays"); (ii) UBS AG ("UBS"); and (iii) HSBC Bank plc ("HSBC"[1]) (collective-
ly, "Settling Defendants"). If approved, the Settlements will create an aggregate fund totaling
$36,100,000 (the "Settlement Fund") for the benefit of Bondholder class ("Class") members.

Bondholder Plaintiffs negotiated and entered into each of the three settlements separately.
These settlements resulted from arm's length negotiations which first began in January 2016, and
included mediation conducted under the auspices of the Honorable Layn R. Phillips, U.S.D.J., ret..
The Settlements offer an excellent result for the Class; are fair, reasonable and adequate under the
governing standards; and warrant approval.

## II.     <u>THE SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED.</u>

### A.     <u>THE STANDARD FOR PRELIMINARY APPROVAL.</u>

"Preliminary approval is generally the first step in a two-step process before a class-action
settlement is approved." *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 CIV 0962
(RCC), 2005 U.S. Dist. WL 1635158, at *4 (S.D.N.Y. July 8, 2005). "In considering preliminary ap-
proval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re
NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*").
Then, "[o]nce preliminary approval is bestowed, the second step of the process ensues; notice is giv-

---

[1] Claims against defendant HSBC Holding plc are also released pursuant to the HSBC Settlement.

en to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Id.*

In assessing whether to approve a settlement preliminarily, the court should consider both the "negotiating process leading up to the settlement, i.e., procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). Preliminary approval "is appropriate where [the settlement] is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . , and where the settlement appears to fall within the range of possible approval." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010).

This Court has explained that "[p]reliminary approval is not tantamount to a finding that [a proposed] settlement is fair and reasonable…. Instead, at this stage, we need only decide whether the terms of the Proposed Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, Nos. 11 MDL 2262 (NRB), 11 Civ. 2613 (NRB), 2014 U.S. Dist. WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014) ("*LIBOR*") (internal quotation marks and citation omitted). This requires only "what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E.R.R.s,* 627 F.2d 631, 634 (2d Cir. 1980). *See also Tart v. Lions Gate Entertainment Corp.*, No. 14–CV–8004 (AJN), 2015 U.S. Dist. WL 5945846, *5 (S.D.N.Y. Oct. 13, 2015) ("If an initial evaluation demonstrates that a settlement agreement is within the range of possible approval, a court may authorize notice.") (internal quotation marks and citations deleted).

Consideration of preliminary approval is vested in the district court's discretion. *See In re Ivan F. Boesky Secs. Litig.,* 948 F.2d 1358, 1368 (2d Cir. 1991); *In re PaineWebber Ltd. P'ships.*

*Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997). In determining whether preliminary approval is appropriate, the court should begin "with the proposition that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2011 U.S. Dist. WL 1706778, at *2 (D. Vt. May 4, 2011); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).

As set forth below, the Settlements meet this standard and satisfy factors identified by this Court (*see LIBOR*, 2014 WL 6851096, at *2), and should therefore be preliminarily approved.

### B.     THE SETTLEMENTS ARE PRESUMED TO BE FAIR.

A proposed settlement that is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation" enjoys a "presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000). *See also Long v. HSBC USA Inc.*, No. 14 Civ. 6233 (HBP), 2015 U.S. Dist. WL 5444651 (S.D.N.Y. Sept. 11, 2015) (settlement presumed fair where principal aspects resulted from pre-litigation discussions, mediation with an experienced mediator, and continued negotiations thereafter among capable and experienced counsel). In such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re Paine-Webber Ltd. P'ships. Litig.*, 171 F.R.D. at 125.

Bondholder Plaintiffs' Counsel have the requisite skills and experience in class actions to lead this litigation on behalf of the putative Class. *See* Pretrial Order No. 2, entered August 14, 2012, ECF No. 206. Second, as set forth in greater detail in the Declaration of Karen L. Morris and Robert S. Kitchenoff in Support of Bondholder Plaintiffs' Motion for Preliminary Approval of Settlements with Barclays Bank plc, UBS AG and HSBC Bank plc, Conditional Certification of the Bondholder Settlement Class, and Appointment of Settlement Class Counsel ("Morris-Kitchenoff Declaration" or

"Morris-Kitchenoff Decl.", filed herewith), settlement negotiations between Bondholder Plaintiffs and each of the Settling Defendants were  rigorous and conducted at arm's length, with extensive knowledge of the underlying claim. In addition, Hon. Layn Phillips, formerly a United States District Judge, assisted in the resolution of both the UBS and the HSBC settlements. Morris-Kitchenoff Decl. ¶¶ 30-32, 35-36. The use of a mediator "strengthen[s]" the presumption that the compromise is fair and reasonable. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 U.S. Dist. WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010); *see also Capsolas v. Pasta Res. Inc.*, No. 10-CV-5595 RLE, 2012 U.S. Dist. WL 1656920, at *1 (S.D.N.Y. May 9, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."). In short, the Settlements are entitled to a presumption of fairness, and there is nothing in the record in conflict with that presumed fairness.

### C.    THE SETTLEMENTS ARE FAIR AND REASONABLE UNDER RELEVANT *GRINNELL* FACTORS.

Although it is unnecessary to undertake a full fairness analysis at the preliminary approval stage, *see, e.g.*, *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006),[2] some courts have at this stage nonetheless looked to the nine factors for final settlement approval announced in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) (the "*Grinnell* factors"). *See, e.g.*, *Reade-Alvarez*, 237 F.R.D. at 34; *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the de-

---

[2]   Preliminary approval is warranted so long as "a proposed settlement is merely within the range of possible approval." *Id.*

fendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.

Taken together, these factors, to the extent relevant at this preliminary stage, favor preliminary approval of the Settlements.

### 1.    The Complexity, Expense, and Likely Duration of the Litigation.

It is a well-recognized fact that "Federal antitrust cases are complicated, lengthy, and bitterly fought, as well as costly." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 U.S. Dist. WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). *See also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (antitrust class actions "are notoriously complex, protracted, and bitterly fought").

The Bondholder Action is no exception. It was commenced in early 2012. Since that time, it was dismissed (*LIBOR I*); leave to amend was denied (*LIBOR II*); Plaintiffs' appeal was dismissed *sua sponte* by the Second Circuit (*In re LIBOR-Based Fin. Instr. Antitrust Litig.*, No. 13–3565 (L), 2013 WL 9557843 (2d Cir. Oct. 3, 2013)); the U.S. Supreme Court granted a writ of certiorari (*Gelboim v. Bank of Am. Corp.*, — U.S. —, 134 S.Ct. 2876, 189 L.Ed.2d 832 (Mem. 2014)) and unanimously reversed and remanded the matter (*Gelboim v. Bank of Am. Corp.*, — U.S. —, 135 S.Ct. 897, 190 L.Ed.2d 789 (2015) ("*Gelboim I*")); the Second Circuit reversed and remanded the matter on the merits (*Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016) ("*Gelboim II*"), *cert. denied*, — U.S. —, 137 S. Ct. 814 (2017)), and this Court has again dismissed the Bondholder Action (*In re LIBOR-Based Fin. Instr. Antitrust Litig.*, No. 11-md-02262-NRB, 2016 U.S. Dist. WL 7378790 (S.D.N.Y. 2016) ("*LIBOR VI*")). As a result of these events, after more than five years of active liti-

gation, defendants never even answered Bondholder Plaintiffs' First Amended Complaint ("Complaint"). Clearly this case provides, as the Court has recognized in preliminarily approving a partial settlement by the Exchange-Based plaintiffs, a stark example of complex and protracted antitrust litigation. *See LIBOR*, 2014 WL 6851096, at *2 (plaintiffs "must prove a factually complex case with genuine legal uncertainties").

As the events in the case to date clearly indicate, even if Bondholder Plaintiffs were to succeed on a second appeal to the Second Circuit, the case would likely continue to be contested and time-consuming in the future and would face material risks. Bondholder Plaintiffs would be confronted by a highly complicated and contentious discovery process, motion for class certification (with a potential Rule 23(f) appeal resulting), motion for summary judgment, a lengthy trial, and a protracted appeal. *See*, *e.g.*, *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y.  1998) ("*NASDAQ III*")  (estimating that trial could consume over a year). In short, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result."  *NASDAQ III*,  187 F.R.D. at 477. The first *Grinnell* factor supports preliminary approval.

## 2.        The Reaction of the Class to the Settlement.

It is premature to consider the Class's reaction to the Settlements, since no notice has yet been disseminated. *See Reade-Alvarez*, 237 F.R.D. at 34. The Bondholder Plaintiffs approve of these Settlements. Should any objections from Class members be received prior to the fairness hearing, Bondholder Plaintiffs' Counsel will timely address those concerns in connection with the final approval process.

### 3.     The Stage of the Proceedings.

The stage of the proceedings is germane to determine "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 U.S. Dist. WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). The lack of formal discovery does not preclude approval of a settlement. *Id.*; *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("*Global Crossing*"). Instead, "it is enough for the Parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10.

This *Grinnell* factor supports preliminary approval here. Over the course of more than five years, Bondholder Plaintiffs have briefed and argued the viability of their antitrust claim in this Court and before the Second Circuit. The Court has rendered at least six lengthy rulings related to various claims in this multidistrict proceeding. *See* ECF Nos. 286, 389, 568, 1164, 1234, 1676. Moreover, following the Second Circuit's decision in *Gelboim II*, Bondholder Plaintiffs' Counsel, and their experts gained access to, and rigorously reviewed and analyzed expansive productions from all of the defendants. This discovery includes, *inter alia*, emails, Bloomberg chats, telephone calls and other forms of communications both within the defendant banks and with individuals at other banks and institutions, as well as extensive internal transactional data reflecting aspects of the bank's borrowing and lending activities during the Class Period. In addition, beginning with the signing of the original term sheet with UBS in mid-May 2016, and expanding with each subsequent settlement, Bondholder Plaintiffs' Counsel have obtained detailed information relevant to their claims in the form of, *inter alia*, attorney proffers and through discussions with counsel for each of the Settling Defendants. Bondholder Plaintiffs' Counsel have also closely monitored the record, including review of transcripts, of relevant LIBOR-related criminal trials in both this country and in England. Thus, Bond-

holder Plaintiffs' Counsel have undertaken extensive legal and factual investigation of the Bondhold-er Plaintiffs' claims and the reasonable value of the case. Morris-Kitchenoff Decl. ¶¶ 20, 39.

Bondholder Plaintiffs' Counsel have retained experts to assist them in numerous aspects of the litigation, including deepening their understanding of the LIBOR market, the functioning of the bond market, assistance in evaluating discovery materials, and estimation of the Class's damages, including determination of the "but for" harm to the Class. The information gained through these var-ious means has provided Bondholder Plaintiffs' Counsel with a deep understanding of the relative strengths and weaknesses of their case that has enabled them to negotiate the three settlements, which they believe represent, both individually and together, an excellent result for the Class. The stage of the litigation is thus a factor that supports preliminary approval of the Settlements.

### 4.     The Risks of Establishing Liability and Damages.

"In assessing the Settlement, the Court should balance the benefits afforded the Class, includ-ing the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation." *In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 U.S. Dist. WL 2944620, at *4 (S.D.N.Y. July 31, 2008) (emphasis in original). As the foregoing discussion reflects, the risk of establishing liability and damages is substantial.  This Court has again dismissed Bondholder Plaintiffs' antitrust claim, and, for a second time, has also ruled that it lacks personal jurisdiction over the foreign bank defendants. All three of the Settling Defendants are among the foreign banks that achieved dismissal on both substantive and jurisdictional grounds. Given these rulings and for other reasons as well, Bondholder Plaintiffs have consistently faced – and will continue to face – major risks that they will be unable to ultimately prevail in the Bondholder Action.

Adding to this heightened level of risk, the defendants in this action, including the Set-tling Defendants, are some of the largest and wealthiest banks in the world, represented by some

of the best law firms in the United States. Absent settlement, the Settling Defendants would as-suredly continue to vigorously contest their liability and damages. "Establishing otherwise [would] require considerable additional pre-trial effort and a lengthy trial, the outcome of which is uncertain." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012) *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013). As evident from the course of the Bondholder Action to date, "liability is never automatic." *Park v. Thomson Corp.*, No. 05 CIV 2931 (WHP), 2008 U.S. Dist. WL 84551, at *9 (S.D.N.Y. Oct. 22, 2008). And even if Bondholder Plaintiffs were able to establish Settling Defendants' liability at trial, "[t]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but re-covered no damages, or only negligible damages, at trial, or on appeal." *NASDAQ III*, 187 F.R.D. at 476; *see also MCI Commc'ns. Corp. v. Am. Tel. & Telegraph Co.*, 708 F.2d 1081, 1166–69 (7th Cir. 1983) (antitrust judgment was remanded for a new trial and damages); *U.S. Football League v. Nat'l Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335, 1377 (2d Cir. 1988).

In sum, "[t]here is a substantial risk that the plaintiff might not be able to establish liabili-ty at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 U.S. Dist. WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). Against the back-drop of these risks and circumstances, preliminary approval of the Settlements is warranted.

### 5.     The Risks of Maintaining the Class Action through Trial.

Although Bondholder Plaintiffs believe that the Class will be certified, they also understand that the defendants will vigorously contest class certification and that there is no guarantee that a liti-

gation class will be certified. Even if a litigation class is certified, the Court could nonetheless review and modify that certification at any point prior to trial, such that the probability of maintaining the Class through trial would never be fully certain. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"); *see also Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013). This *Grinnell* factor accordingly favors preliminary approval.

### 6. The Ability of Defendants to Withstand a Greater Judgment.

Settling Defendants could withstand a greater judgment than their respective settlement amounts. But this fact should not weigh against granting preliminary approval. Measured against the other *Grinnell* factors, "[t]he mere fact that a defendant 'is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574, *33 (S.D.N.Y. Sept. 9, 2015) (quoting *Global Crossing*, 225 F.R.D. at 460); *see also In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 U.S. Dist. WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("Courts have recognized that the defendant's ability to pay is much less important than the other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval.") (quoting *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).

### 7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.

The last two *Grinnell* factors "recognize the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores,* 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In applying these factors, "[d]ollar amounts [of class action settlements] are judged not in comparison

with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984); *see also NASDAQ III*, 187 F.R.D. at 478 ("Ultimately, the exact amount of damages need not be adjudicated for purposes of settlement approval."). Put another way, the "essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981). Consequently, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

As noted above, after five years of litigation, the Bondholder Action has recently been dismissed on the pleadings for the second time. If not settled, the Bondholder Action against the Settling Defendants would reasonably entail years more of litigation with no guarantee that Bondholder Plaintiffs would ultimately succeed. To recover, they must first prevail on their second appeal, and then establish liability, get a class certified and notified, prove damages, and succeed in upholding a favorable judgment on subsequent appeal. The risks of these remaining stages of a successful case are arguably dispositive for these *Grinnell* factors. *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("[T]he propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery).").

The certainty of a recovery now, compared to an uncertain recovery, if at all, years from now, weighs heavily in favor of preliminary approval. *See AOL Time Warner*, 2006 WL 903236, at *13 ("[T]he benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery."). In comparison to the risks of continuing litigation, the three Settlements provide Bondholder

11

Plaintiffs and the Class substantial benefits, including significant cash compensation, in an aggregate amount of $36,100,000, reflecting the payment of $7.1 million from Barclays, $17.9 million from UBS, and $11.1 million from HSBC. Each of the Settlements likewise offers immediate and substantial cooperation. Although the cooperation is intangible and hence not quantifiable, the value of the Settling Defendants' cooperation to Bondholder Plaintiffs and the Class is substantial: it has and will continue to provide, among other benefits, continued access to documents and transactional data, and key sources of market knowledge – through attorney proffers, as well as pursuant to inquiries to Settling Defendants' counsel and/or direct employee interviews. These and other aspects of the non-monetary consideration provided under the Settlements will assist Bondholder Plaintiffs in their continued litigation against the Non-Settling Defendants. Morris-Kitchenoff Decl. ¶¶ 41-46.

The Barclays settlement further resolves the issue of the scope of the release of claims for OTC class members who also held instruments within the Bondholder Class. As detailed in the Morris-Kitchenoff Declaration, pursuant to an agreement reached in connection with the Bondholder-Barclays settlement, OTC Class members will be able to collect under *both* the OTC settlement (for claims related to LIBOR-Based Instruments purchased directly from a defendant (or its subsidiary or affiliate)) and the Bondholder Settlements (for relevant U.S. Dollar LIBOR-Based Debt Securities issued by a non-defendant and held during the Class Period). This formulation for the complementary scope of releases in connection with the Barclays settlement has been replicated in each subsequent Bondholder settlement. Morris-Kitchenoff Decl. ¶ 27.

*   *   *

In sum, each of the relevant *Grinnell* factors weighs in favor of this Court granting preliminary approval to the Settlements.

12

III.   **THE SETTLEMENT CLASS SHOULD BE CERTIFIED AND
       SETTLEMENT CLASS COUNSEL APPOINTED.**

In accordance with the Settlements, Bondholder Plaintiffs respectfully request that the Court

certify the following Class for settlement purposes:

> all persons and entities (other than defendants in the Bondholder Action and their af-
> filiated persons and entities) who owned (including beneficially or in "street name")
> any debt security that was assigned a unique identification number by the CUSIP sys-
> tem, on which interest was payable at any time between August 1, 2007, and May 31,
> 2010[3], and where that interest rate was payable at a rate expressly tied to the U.S.
> Dollar LIBOR rate ("LIBOR-Based Debt Security"); provided, however that any
> such securities that were issued by any defendant, including its subsidiaries and affili-
> ates, as obligor, are excluded from the definition of LIBOR-Based Debt Security.

UBS Settlement Agreement, Ex. 3 to Morris-Kitchenoff Decl., ¶ 3.2.; *see also* Barclays Settlement

Agreement at ¶¶ 1.8 and 1.51 and HSBC Settlement Agreement at ¶¶ 1.6 and 1.46, Exs. 1 and 4

to Morris-Kitchenoff Decl.

Certification of a settlement class is appropriate where that class meets all of the requirements

of Rule 23(a), as well as one of the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 614 (1997). When considering certification of a settlement class, "courts must take a

liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-

58 (E.D.N.Y. 2009).  For the reasons explained below, the proposed settlement Class satisfies the

requirements for certification and should be certified.

### A.   **RULE 23(a) REQUIREMENTS.**

The Supreme Court has explained the Rule 23(a) factors as follows:

> Rule 23(a) states four threshold requirements applicable to all class actions:  (1) nu-
> merosity (a "class [so large] that joinder of all members is impracticable"); (2) com-
> monality ("questions of law or fact common to the class"); (3) typicality (named par-
> ties' claims or defenses "are typical . . . of  the  class"); and (4) adequacy  of represen-
> tation (representatives "will fairly and adequately protect the interests of the class").

---

[3] Pursuant to Paragraph 1.17 of the Barclays Settlement Agreement, if the Bondholder Plaintiffs expand the Class
Period in any amended pleading filed before the Court grants final approval, then the class period defined in the
Barclays settlement shall also be expanded to include "any such longer period."

*Amchem*, 521 U.S. at 613. The proposed settlement Class meets each of these requirements.

### 1.    Rule 23(a)(1) – Numerosity.

The numerosity requirement is satisfied where the class is so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). This does not mean that joinder must be impossible, "but refers to the difficulty or inconvenience of joinder." *In re Ind. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002).

Numerosity is presumed where a class consists of 40 or more members. *See generally Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Public Offering Sec. Litig.*, 260 F.R.D. 81, 90-91 (S.D.N.Y. 2009). "While a precise quantification of the class is not required, some evidence or a reasonable estimate of the number of class members must be provided." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350-51 (E.D.N.Y. 2006). In making this determination, "the court may make some common sense assumptions and rely on reasonable inferences drawn from the available facts." *Id.* at 351.

The numerosity requirement is more than satisfied here. As set forth in the Bondholder Plaintiffs' Complaint,

> [d]uring the Class Period there were outstanding more than 5,200 Relevant LIBOR-Based Debt Securities issued by corporate, state and municipal, and foreign sovereign issuers with an out-standing face value in excess of $500 Billion.  While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs are in-formed and believe that there are at least thousands of geographically dispersed Class members who suffered injury, *inter alia*, by receiving less interest pursuant to their Relevant LIBOR-Based Debt Securities during the Class Period.

*Id.* (ECF 131) ¶ 199. This reasonable estimate easily meets the numerosity requirement.

### 2.    Rule 23(a)(2) – Commonality.

Because "[a] single common issue of law will satisfy the commonality requirement," *Weil v. Long Island Sav. Bank*, 200 F.R.D. 164, 169 (E.D.N.Y. 2001), commonality is generally considered

a "'low hurdle' easily surmounted." *Prudential Sec. Inc.*, 163 F.R.D. at 206 n.8; *see also Global Crossing*, 225 F.R.D. at 451 (noting that commonality "does not require an identity of claims or facts among class members; instead the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class"). Here, Bondholder Plaintiffs and each Class member make the same factual and legal claims, and thus share issues of fact or law, including, but not limited to:

a.   whether the defendants conspired to depress LIBOR rates in violation of the Sherman Act;

b.   whether the defendants' conduct had an anticompetitive and manipulative effect on LIBOR during the Class Period;

c.   whether the defendants' conduct had a direct, substantial, reasonably foreseeable, and adverse impact upon interstate commerce in the United States during the Class Period;

d.   whether the defendants' conduct depressed the amounts of interest Plaintiffs and the members of the Class earned on their relevant LIBOR-Based Debt Securities during the Class Period; and

e.   the appropriate measure of damages for the injury sustained by Plaintiffs and the members of the Class as a result of the defendants' unlawful activities.

Complaint ¶ 202. Accordingly, the commonality requirement is easily satisfied.

### 3.   Rule 23(a)(3) – Typicality.

Typicality is present when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "Since the claims only need to

share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002).[4]

Bondholder Plaintiffs' claim is co-extensive with that of the Class. Their claim is that the Settling Defendants and the other banks on the British Bankers Association's U.S. Dollar LIBOR panel colluded to manipulate their LIBOR quotes, resulting in the suppression of the published LIBOR rate throughout the Class Period, thereby causing Bondholder Plaintiffs and the Class to receive less interest than they otherwise would have been paid on the U.S. Dollar LIBOR-Based Debt Securities they held. As the Second Circuit has found, "When," as in this case, "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993); *see In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998) (noting that typicality "in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants").

The typicality requirement is met here.

### 4.      Rule 23(a)(4) – Adequacy.

Adequacy requires the Court to be satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met when (i) the named plaintiffs do not have interests that are antagonistic to those of the class, and (ii) they have selected counsel who is qualified, experienced, and generally able to conduct the litigation. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Importantly, "[o]nly a

---

[4] The "commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Accordingly, since commonality has been established, typicality has been established as well.

16

conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)); s*ee also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 514–15 (S.D.N.Y. 1996) ("*NASDAQ I*") (holding that to deny class certification on adequacy grounds, "it must be shown that any asserted 'conflict' is so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation").

The adequacy prerequisite is satisfied here. First, no antagonistic interests are present. All members of the Class have claims arising from the same alleged course of conduct and the same legal theories as the Bondholder Plaintiffs. This is sufficient. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 112–13 (S.D.N.Y. 2010) ("[T]he great weight of authority in price-fixing conspiracy cases, absent special circumstances such as arbitration, holds that the victim of one alleged co-conspirator is adequate to prove liability for victims of all co-conspirators.") (citing cases). Second, Bondholder Plaintiffs have demonstrated their effective representation of the interests of the Class by selecting qualified counsel. Bondholder Plaintiffs' Counsel are highly qualified and, as reflected herein, have vigorously pursued this litigation on behalf of the Bondholder Plaintiffs and the putative Class. *See also* Morris-Kitchenoff Decl. ¶¶ 2, 7-21.

\* \* \*

For the above reasons, each of the requirements of Rule 23(a) is satisfied here.

## B.      RULE 23(b)(3) REQUIREMENTS.

The Class also satisfies the requirements of Rule 23(b)(3) that (i) common issues predominate over individual issues, and (ii) a class action is the superior method of adjudicating this controversy. Fed. R. Civ. P. 23(b)(3); *see also Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006).

### 1.    Predominance

Predominance requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The rule's purpose is to ensure that a class is certified when "'a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3) adv. comm. n. to 1966 amend.). "If the most substantial issues in controversy will be resolved by reliance primarily upon common proof, class certification will generally achieve the economies of litigation that Rule 23(b)(3) envisions." *Air Cargo Servs. Antitrust Litig.*, No. 06–MD–1175 (JG) (VVP), 2014 U.S. Dist. WL 7882100, *35 (E.D.N.Y. Oct. 15, 2014). Put another way, class certification is warranted when "those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008), abrogated on other grounds by *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, — U.S. —, 133 S. Ct. 1184, 185 L.Ed.2d 308 (2013). However, predominance does not require all issues to be common; rather, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001). Rule 23(b)(3) "calls only for predominance, not exclusivity, of common questions" *Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34, 37 (S.D.N.Y. 1977).

Predominance is "readily met in certain cases alleging … violations of the antitrust law," unlike mass tort cases in which the "individual stakes are high and disparities among class members are great." *Amchem*, 521 U.S. at 625; *see also Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 315 (3d Cir. 1998) (noting that "the complexity of a case alleging physical injury .

18

. . differs greatly from a case alleging economic injury"). This is because the elements of claims tend to be amenable to common proof, as liability focuses on the alleged unlawful actions of the defendants, not the actions of individual plaintiffs. Accordingly, courts have repeatedly found antitrust claims to be well suited for class treatment. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2014) ("[I]n antitrust cases, 'Rule 23, when applied rigorously, will frequently lead to certification.'"). *See*, *e.g.*, *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 120 (S.D.N.Y. 2015) (Court found that whether the defendant violated the antitrust laws, whether the plaintiffs were harmed by the defendant's conduct, and whether the injury suffered by the plaintiffs was an antitrust injury were clearly predominant over the individual issue of proving damages, which "pales in comparison to the central questions regarding liability.")[5]

Finally, even if predominance concerns may be an issue at certification, the settlement context of the present motion can make a finding of predominance easier, as long as other requirements of Rule 23 are met, as they are here. *See Am. Int'l Grp. Secs. Litig.,* 689 F.3d 229, 240 (2d Cir. 2012) (the "predominance inquiry will sometimes be easier to satisfy in the settlement context" so long as "other requirements of Rule 23 … such as the Rule 23(a)(4) requirement of adequate representation," are carefully assessed.).

### 2.    Superiority

The superiority prong requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court must

---

[5] *See also, e.g.*, *In re Ins. Brokerage Antitrust Litig.,* 282 F.R.D. 92, 108 (D.N.J. 2012) ("Given that antitrust class action suits are particularly likely to contain common questions of fact and law, it is not surprising that these types of class actions are also generally found to meet the predominance requirement"); *Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (in horizontal price-fixing cases, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class").

balance the advantages of class action treatment against alternative available methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3) (listing four non-exclusive factors relevant to this determination). The superiority requirement, however, is applied in a more lenient fashion in the settlement context because the Court "need not inquire whether the case, if tired, would present intractable management problems." *Amchem*, 521 U.S. at 620; *Am. Int'l Group*, 689 F.3d at 239, 240.

A class action is the superior method for the fair and efficient adjudication of the Bondholder Action. First, Class members are significant in number and geographically disbursed, making a "class action the superior method for the fair and efficient adjudication of the controversy." *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004). Further, the majority of Class members have neither the incentive nor the means to litigate these claims individually. A class action allows members of the Class to "pool claims which would be uneconomical to litigate individually," as "no individual may have recoverable damages in an amount that would induce him to commence litigation on his own behalf." *Currency Conversion*, 224 F.R.D. at 566; *see also Seijas v. Republic of Arg.,* 606 F.3d 53, 58 (2d Cir. 2010)). "Under such circumstances, a class action is efficient and serves the interest of justice." *Id.*

In sum, certification of the Class here is the superior course of action.

### C.   THE COURT SHOULD APPOINT BONDHOLDER PLAINTIFFS' COUNSEL AS COUNSEL FOR THE SETTLEMENT CLASS.

Under Rule 23(g), a court that certifies a class must appoint class counsel, who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(1). In determining class counsel, the Court must consider (i) the work undertaken by counsel in identifying or investigating the potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and similar claims; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A).

Bondholder Plaintiffs' Counsel readily meet these requirements and should be appointed as counsel for the Class. First, as outlined in the Morris-Kitchenoff Declaration, for over five years, Bondholder Plaintiffs' Counsel have actively litigated the claims in this action, including appeals to the Supreme Court and the Second Circuit. *Id.* ¶¶ 7-21. Second, the Morris and Morris and Weinstein Kitchenoff firms have significant experience litigating antitrust class actions, and were appointed by this Court as Interim Co-Lead Counsel in the Bondholder Action. Pre-Trial Order No. 2, ECF No. 206. Following their appointment, Morris and Morris and Weinstein Kitchenoff have vigorously prosecuted the Bondholder Action and committed substantial resources necessary to effectively and efficiently litigate the case, including, *inter alia*, retention and close coordination with experts, re-view and analysis of a very substantial volume of defendants' communications and internal documentation produced in discovery, and analysis of individual bank transactional data in support of their work to develop models to determine but-for damage values. Morris-Kitchenoff Decl. ¶¶ 20, 39. For these reasons, the Court should now appoint Morris and Morris and Weinstein Kitchenoff to be counsel for the Class.

## IV.   PLAINTIFFS WILL FILE A SEPARATE MOTION FOR APPROVAL OF A NOTICE PLAN AND PLAN OF ALLOCATION.

Following the submission of competitive bids from different alternative potential providers, Bondholder Plaintiffs' Counsel have, subject to Court approval, retained Garden City Group, LLC as the Claims Administrator. Bondholder Plaintiffs' Counsel likewise have, also subject to Court approval, retained Wilmington Savings Fund Society, FSB to serve as Escrow Agent in connection with the settlement proceeds. Both institutions have successful track records of performing class-action settlement services in a highly professional, efficient, and cost-effective fashion. Morris-Kitchenoff  Decl. ¶ 49.

Bondholder Plaintiffs are committed to allocation of the Net Settlement Fund in a reasonable and equitable fashion among members of the Class. Bondholder Plaintiffs' Counsel, working closely with their experts, are presently analyzing requisite underlying data, acquired on behalf of the putative Class from Bloomberg and other sources of historical market data. These data include detailed information on an instrument-by-instrument basis that will facilitate the calculation of damages suffered by members of the Class. Bondholder Plaintiffs' Counsel are also working closely with their experts to determine appropriate but-for values to underpin the allocation of the Net Settlement Fund should the Court ultimately approve the Settlements. Because that extensive work has not yet been completed, Bondholder Plaintiffs respectfully propose deferring to a separate motion, to be filed at a later date, the Court's consideration of a plan of allocation and form and manner of notice of the Settlement. At that time, Bondholder Plaintiffs' Counsel will propose plans of notice (including the claim form) and allocation which will reflect the input from economic, notice, and possibly other consultants. Bondholder Plaintiffs expect to file this motion as soon as practicable after completion of the necessary data analysis and but-for modeling. This is the practical approach the Court previously adopted in preliminarily approving, for example, the Exchange-Based Plaintiffs' settlement with Barclays, *see LIBOR*, 2014 WL 6851096, at *3 (citing cases), and the OTC Plaintiffs' settlement with Barclays, *see* Memorandum and Order, ECF No. 1678, pp. 7-8..

The Honorable Lorna G. Schofield adopted this same approach. In her order preliminarily approving a settlement, Judge Schofield deferred to a later date a separate submission and consideration of a proposed notice procedure, just as Bondholder Plaintiffs propose here. *See In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789-LGS, 2015 U.S.Dist. LEXIS 175877 (S.D.N.Y. Dec. 15, 2015). Similarly, in *Precision Associates, Inc. v. Panalpina World Transport*, No. 08-cv-0042 (JJG) (E.D.N.Y.), the plaintiffs moved for preliminary approval of the first ten

22

partial settlements prior to formulating any plan of distribution, and the Honorable John J.

Gleeson preliminarily approved each of these settlements before the plan of distribution had been

proposed. *See id.*, ECF Nos. 527, 530, 576, 587, 590, 605, 637, 643, 645, 649, 668, 673, 687,

692, 712, 715.

## V.   **CONCLUSION**

For the foregoing reasons, the Court should grant the Motion.

Dated: June 6, 2017                                     Respectfully submitted,


*/s Karen L. Morris*                                    */s David H. Weinstein*
Karen L. Morris (Bar No. 1939701)                       David H. Weinstein
Patrick F. Morris                                       Robert S. Kitchenoff
R. Michael Lindsey                                      WEINSTEIN KITCHENOFF & ASHER LLC
MORRIS AND MORRIS LLC                                   100 South Broad Street, Suite 705
   COUNSELORS AT LAW                      Philadelphia, PA  19110
4023 Kennett Pike, #254                                 Tel.: (215) 545-7200   Fax: (215) 545-6535
Wilmington, DE  19807                                   Email:  weinstein@wka-law.com
Tel.: (302) 426-0400                                          kitchenoff@wka-law.com
Email: kmorris@morrisandmorrislaw.com
     pmorris@morrisandmorrislaw.com
     rmlindsey@morrisandmorrislaw.com

                                   *Attorneys for Plaintiffs*
                                   *Ellen Gelboim and Linda Zacher*


Of Counsel:
Thomas C. Goldstein
Eric F. Citron
Goldstein & Russell, P.C.
7475 Wisconsin Avenue, Suite 850
Bethesda, MD 20814
(202) 362-0636