**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| ———————————————————— | ) | |
| IN RE LIBOR-BASED FINANCIAL | ) | |
| INSTRUMENTS ANTITRUST LITIGATION | ) | MDL No. 2262 |
| ———————————————————— | ) | |
|  | ) | |
| THIS DOCUMENT RELATES TO: | ) | Master File No. 1:11-md-2262-NRB |
| Case No. 12-CV-1025 (NRB) | ) | ECF Case |
| ———————————————————— | ) | |
|  | ) | |
| BONDHOLDER PLAINTIFF ACTION | ) | |
| ———————————————————— | ) | |

**SETTLEMENT AGREEMENT BETWEEN**
**BONDHOLDER PLAINTIFFS**
**AND HSBC BANK plc**

This settlement agreement (the "Settlement Agreement" or "Agreement") is made and entered into this 15th day of March, 2017 (the "Execution Date"), between Plaintiffs Ellen Gelboim and Linda Zacher (collectively, the "Bondholder Plaintiffs"), individually and on behalf of the Bondholder Class in the Bondholder Action, and defendant HSBC Bank plc ("HSBC"), by and through Bondholder Plaintiffs' Counsel and HSBC's Counsel, respectively.  The Parties intend this Agreement to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereof.

WHEREAS, the Bondholder Plaintiffs[1] are prosecuting the Bondholder Action on their own behalf and on behalf of the Bondholder Class against Defendants, including HSBC;

WHEREAS, the Bondholder Plaintiffs have alleged, among other things, that HSBC violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring to manipulate the U.S. Dollar LIBOR rate;

WHEREAS, the Bondholder Plaintiffs allege that they and the other members of the Bondholder Class suffered monetary damages as a result of HSBC's (and the other Defendants') alleged conduct;

WHEREAS, HSBC has denied and continues to deny each and every one of the claims and allegations of wrongdoing made by Bondholder Plaintiffs in the Bondholder Action and all charges of wrongdoing or liability against HSBC arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Bondholder Action;

WHEREAS, HSBC maintains that it has meritorious defenses to the claims of liability and damages made by Bondholder Plaintiffs;

---

[1] The capitalized terms used in the following whereas clauses are defined *infra* in Section 1. "Definitions."

WHEREAS, the Bondholder Plaintiffs, for themselves individually and on behalf of each member of the Bondholder Class, and HSBC agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission or evidence of anything, including, without limitation: (i) the merit or lack of merit of any claim or defense; (ii) any violation of any statute or law; (iii) any liability or wrongdoing by HSBC; (iv) the truth of any of the claims or allegations alleged in the Bondholder Action; or (v) an admission of liability by any Person, including, without limitation, the Released HSBC Parties;

WHEREAS, HSBC agrees to cooperate with Bondholder Plaintiffs' Counsel and Bondholder Plaintiffs as set forth below in this Agreement;

WHEREAS, this Agreement is the product of arm's-length negotiations between Bondholder Plaintiffs' Counsel and HSBC's Counsel and embodies all of the terms and conditions of the settlement agreed upon between HSBC and Bondholder Plaintiffs (the "Settlement"), both for themselves individually and on behalf of each Class Member;

WHEREAS, Bondholder Plaintiffs' Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Bondholder Action, the legal and factual defenses thereto, and the applicable law, that: (i) it is in the best interests of the Bondholder Class to enter into this Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein, including the value of the Settlement Amount to be paid by HSBC under this Agreement and the non-monetary consideration to be provided to the Bondholder Plaintiffs by HSBC under this Agreement, are obtained for the Bondholder Class; and (ii) the Settlement set forth in this Agreement is fair, reasonable, and adequate and in the best interests of the Bondholder Class;

WHEREAS, HSBC, while continuing to deny that it is liable for the claims asserted

2

against it in the Bondholder Action and believing that it has good and meritorious defenses thereto, has nevertheless agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and thereby to put fully to rest this controversy, to avoid the risks inherent in complex litigation, and to obtain complete dismissal of the Bondholder Action as against HSBC and a release of the claims as set forth herein;

NOW, THEREFORE, in consideration of the covenants, terms, and releases in this Agreement, it is hereby agreed, by and among the Bondholder Plaintiffs (for themselves individually and on behalf of the Settlement Class and each member thereof) and HSBC, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Bondholder Action shall be finally and fully settled, compromised, and dismissed with prejudice as to HSBC and the other Released HSBC Parties, without costs, except as stated herein, and releases be extended, as set forth below.

## 1. DEFINITIONS.

As used in this Agreement, the following capitalized terms have the meanings specified below:

1.1.    "Agreement" or "Settlement Agreement" means this Settlement Agreement, together with any exhibits attached hereto, which are incorporated herein by reference.

1.2.    "Alternative Judgment" means a Judgment entered by the Court but in a form other than proposed by Bondholder Plaintiffs' Counsel and HSBC.

1.3.    "Authorized Claimant" means any Bondholder Class Member who, in accordance with the terms of this Agreement, is entitled to a distribution from the Net Settlement Fund pursuant to the Distribution Plan or order of the Court.

1.4.    "BBA" means "British Bankers' Association."

1.5.    "Bondholder Action" or "Action" means the putative class action captioned as *Gelboim, et al.* v. *Credit Suisse Group AG, et al.*, No. 12-cv-1025 (S.D.N.Y.), which was designated pursuant to an order entered on August 14, 2012 (ECF No. 38) as the lead action for all class actions brought on behalf of holders of U.S. Dollar LIBOR-Based Debt Securities (as defined herein) and that are filed in or transferred to the United States District Court for the Southern District of New York as related to *In re LIBOR-Based Financial Instruments Antitrust Litigation*, MDL No. 2262 (the "USD LIBOR MDL").

1.6.    "Bondholder Class" or "Settlement Class" means all persons or entities (other than a Defendant and its employees, affiliates, parents, and subsidiaries) that owned (including beneficially in "street name") U.S. Dollar LIBOR-Based Debt Securities during the Class Period.

1.7.    "Bondholder Class Member" or "Class Member" means a person or entity who is a member of the Bondholder Class and has not timely and validly excluded himself, herself, or itself in accordance with the procedures established by the Court.

1.8.    "Bondholder Plaintiffs" means Ellen Gelboim and Linda Zacher, collectively.

1.9.    "Bondholder Plaintiffs' Counsel" means Morris and Morris LLC Counselors At Law and Weinstein Kitchenoff & Asher LLC.

1.10.    "Claims Administration" shall have the meaning set forth in paragraph 5.2.

1.11.    "Claims Administrator" means a qualified and experienced third party to be retained by Bondholder Plaintiffs' Counsel and approved by the Court to manage and administer the process by which the Bondholder Class will be notified of this Agreement and by which each eligible member of the Bondholder Class is paid pursuant to this Agreement. Bondholder Plaintiffs' Counsel intend to seek Court approval for the appointment of Garden City Group LLC

as Claims Administrator.

1.12.  "Class Distribution Order" means the order by the Court to distribute the Net Settlement Fund to Authorized Claimants in accordance with the Distribution Plan and this Agreement.

1.13.  "Class Notice" means the Notice and Summary Notice, collectively.

1.14.  "Class Period" means August 1, 2007 through May 31, 2010, or any such longer period as may be included in any amended pleading filed in the Action before the Court grants final approval of this Settlement.

1.15.  "Court" means the United States District Court for the Southern District of New York.

1.16.  "Defendants" means Credit Suisse Group AG; Bank of America Corporation; Bank of America, N.A.; JPMorgan Chase & Co.; JPMorgan Chase Bank, NA; HSBC Holdings plc; HSBC Bank plc; Barclays Bank PLC; Lloyds Banking Group plc; WestLB AG; Westdeutsche Immobilienbank AG; UBS AG; The Royal Bank of Scotland Group plc; Deutsche Bank AG; Citibank NA; Citigroup Inc.; Coöperatieve Centrale Raiffeisen Boerenleenbank B.A.; The Norinchukin Bank; The Bank of Tokyo-Mitsubishi UFJ, Ltd.; Royal Bank of Canada; and any other Person or Persons who are named as defendants in the Bondholder Action at any time up to and including the date the Court grants final approval of this Settlement.

1.17.  "Distribution Plan" means any plan or formula of allocation whereby the Net Settlement Fund shall be distributed to Authorized Claimants.

1.18.  "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(l)(A) of the Federal Rules of Civil Procedure.

5

1.19.    "Effective Date" or "Effective Date of Settlement" means the date described in paragraph 4.1 below.

1.20.    "Escrow Agent" means the entity jointly designated as such by Bondholder Plaintiffs' Counsel and HSBC, and any successor agent, to maintain the Settlement Fund.

1.21.    "Execution Date" means the date that the Settling Parties execute the Settlement Agreement.

1.22.    "Fairness Hearing" means the hearing to be held by the Court to determine whether the Settlement set forth in this Agreement shall receive final approval pursuant to Federal Rule of Civil Procedure 23.

1.23.    "Fee and Expense Application" shall have the meaning set forth in paragraph 6.1 below.

1.24.    "Fee and Expense Award" shall have the meaning set forth at in paragraph 6.2 below.

1.25.    "Final" means, with respect to any court order, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  An order becomes "Final" when: (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired.  For purposes of this paragraph, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind.  Any appeal or other proceeding pertaining solely to any order

adopting or approving the Distribution Plan, and/or any order issued in respect of the Fee and Expense Application, shall not in any way delay or prevent the Judgment from becoming Final. It is agreed that neither the time provisions of Rule 60 of the Federal Rules of Civil Procedure nor the time provisions of the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

1.26.   "HSBC" means HSBC Bank PLC.

1.27.   "HSBC's Counsel" means Lock Lord LLP.

1.28.   "Judgment" means the order of the Court finally approving the settlement set forth in this Agreement and dismissing the Bondholder Action against HSBC and HSBC Holdings plc with prejudice in conformity with paragraph 3.7 below.

1.29.   "LIBOR" means the London Interbank Offered Rate.

1.30.   "Mediator" means Layn R. Phillips of Phillips ADR.

1.31.   "Net Settlement Fund" shall have the meaning set forth at paragraph 7.9(ix) below.

1.32.   "Notice" means the notice of proposed settlement of the class action to be provided to the Bondholder Class as provided in this Agreement and applicable order(s) of the Court.

1.33.   "Parties" or "Settling Parties" means HSBC and Bondholder Plaintiffs.

1.34.   "Person(s)" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, municipality, state, state agency, any entity that is a creature of any state, any government or any political subdivision, authority, office, bureau or agency of any government, and any business or

legal entity, and any spouses, heirs, predecessors, successors, representatives, or assignees of the foregoing.

1.35.   "Preliminary Approval Order" means an order of the Court that preliminarily approves the settlement set forth in this Agreement.

1.36.   "Proof of Claim and Release" means the form to be sent to Bondholder Class Members, pursuant to order(s) of the Court, by which any Bondholder Class Member may make a claim against the Net Settlement Fund.

1.37.   "Released HSBC Parties" means HSBC, HSBC Holdings plc, and each of their respective past or present direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), divisions, joint ventures, predecessors, successors, agents, attorneys, legal or other representatives, insurers (including reinsurers and co-insurers), assigns, assignees, and current and former employees, officers, and directors of any other of the foregoing entities.

1.38.   "Released Claims" means any and all claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, concerning U.S. Dollar LIBOR-Based Debt Securities which the Settlement Class ever had, now has, or hereafter can, shall or may have, representatively, derivatively, or in any other capacity, against the Released HSBC Parties, arising out of or relating to the factual predicate of the Action.

8

1.39.   "Releasing Party" or "Releasing Parties" means, individually and collectively, Bondholder Plaintiffs and each and every Bondholder Class Member, on behalf of themselves and any of their respective past, present, or future officers, directors, stockholders, agents, employees, fiduciaries, beneficiaries, legal or other representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns, and any other Person legally entitled to bring Released Claims on their behalf or by reason of their relationship to any of the foregoing Persons, whether or not they object to the settlement set forth in this Agreement and whether or not they make a claim for payment from the Net Settlement Fund.

1.40.   "Settlement Amount" means eleven million, one hundred thousand dollars ($11,100,000.00), which includes any and all attorneys' fees, costs, incentive payments to class representatives, and expenses of Class Notice and Claims Administration.  For the avoidance of doubt, none of the Released HSBC Parties will have the responsibility or obligation to make any further payment beyond the Settlement Amount.

1.41.   "Settlement Fund" means the Escrow Account, established pursuant to paragraph 7 of this Agreement, including all monies held therein in accordance with the terms of this Agreement.

1.42.   "Settling Defendant's Claims" means any claim, including unknown claims, that any Released HSBC Party may have against a Releasing Party or Bondholder Plaintiffs' Counsel relating to the institution, prosecution or settlement of the Bondholder Action, except for claims to enforce any of the terms of this Agreement.

1.43.   "Summary Notice" means the summary notice of proposed settlement and hearing for publication that may be directed by order(s) of the Court.

9

1.44.    "Taxes" shall have the meaning set forth in paragraph 9.3 below.

1.45.    "Tax Expenses" shall have the meaning set forth in paragraph 9.3 below.

1.46.    "U.S. Dollar LIBOR-Based Debt Securities" means any U.S. dollar-denominated debt security (a) that was assigned a unique identification number by the CUSIP[2] system; (b) on which interest was payable at any time during the Class Period; and (c) where that interest was payable at a rate expressly linked to U.S. Dollar LIBOR ("USD LIBOR").  U.S. Dollar LIBOR-Based Debt Securities include, but are not limited to, any such bonds, corporate bonds, municipal bonds, government bonds, asset backed securities, residential mortgage backed securities, commercial mortgage backed securities, collateralized debt obligations and collateralized loan obligations.  Excluded from the definition of U.S. Dollar LIBOR-Based Debt Securities are any such securities that were issued by any Defendant or its subsidiaries or affiliates as obligor.

## 2.  GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT.

2.1.    The Settling Parties agree to cooperate with one another in good faith to effectuate and implement the terms and conditions of this Agreement and to exercise their best efforts to accomplish the terms of this Agreement.  This includes HSBC serving notice on those persons and entities required to receive notice pursuant to 28 U.S.C. § 1715.

## 3.  PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING.

3.1.    As promptly as practicable after the Execution Date, Bondholder Plaintiffs' Counsel shall submit to the Court a motion, with HSBC's support and which motion shall be subject to reasonable consultation with HSBC before being submitted to the Court, requesting entry of the Preliminary Approval Order.  That motion shall:

(i)      seek certification of the Bondholder Class for purposes of settlement only,

---

[2] "CUSIP" stands for Committee on Uniform Securities Identification Procedures.

pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3);

(ii)     request preliminary approval of the settlement set forth in this Agreement as fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23;

(iii)    seek the appointment of the Bondholder Plaintiffs as class representatives of the Bondholder Class under Federal Rule of Civil Procedure 23;

(iv)     seek appointment of Bondholder Plaintiffs' Counsel as class counsel under Federal Rule of Civil Procedure 23(g);

(v)      if practicable at the time the motion is filed or otherwise at a later time, seek approval of the form and method of dissemination of (1) the Notice, and (2) the Summary Notice, which shall be published based upon the recommendations of the Claims Administrator.  With the object of reducing the costs of Class Notice, Bondholder Plaintiffs' Counsel shall, to the extent they deem reasonable, coordinate the provision of Class Notice pertaining to this Agreement with the provision of notice for any other settlements that may be reached in the Bondholder Action.  The Claims Administrator will also establish and maintain a dedicated settlement website, from which each member of the Bondholder Class can view and download relevant documents, including the Notice, Summary Notice, and Proof of Claim and Release form;

(vi)     seek appointment of Garden City Group as the Claims Administrator;

(vii)    seek appointment of an Escrow Agent;

(viii)   seek a stay of all proceedings in the Bondholder Action against HSBC and HSBC Holdings plc until the Court renders a final decision on approval of the settlement

11

set forth in this Agreement; and

(ix)    attach a proposed form of order, which shall include such provisions as are typical in such orders, including to the extent applicable (1) a finding that the proposed plan of notice complies with Federal Rule of Civil Procedure 23 and the requirements of due process, (2) addressing scheduling with respect to an ultimate Fairness Hearing, and (3) a provision that, if final approval of the settlement is not obtained, the settlement is null and void, and the Parties will revert to their positions *ex ante* without prejudice to their rights, claims, or defenses, including without limitation any objection or defense based on a lack of personal jurisdiction, subject to the terms of this Agreement.

3.2.    The Settling Parties hereby stipulate for purposes of the settlement only and without prejudice to the position any Settling Party may take with respect to the certification of a class for litigation purposes that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied and, subject to Court approval, the Settlement Class shall be certified.

3.3.    If the settlement as described herein is finally disapproved by any court, is terminated as provided herein or is reversed or vacated following any appeal taken therefrom, then this stipulation for the purposes of the Settlement that the above Settlement Class should be certified becomes null and void, and HSBC reserves all rights to contest that the Bondholder Action should be certified as a class action.  The Parties acknowledge that there has been no stipulation to any classes or certification of any classes for any purpose other than effectuating the Settlement, and that if the Settlement set forth in the Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, or if this

Settlement Agreement otherwise fails to close, this agreement as to certification of the settlement classes becomes null and void *ab initio*, and this Settlement Agreement or any other settlement-related statement may not be cited regarding certification of the settlement class, or in support of an argument for certifying a class for any purpose related to this proceeding.

3.4.    In the event that the Court preliminarily approves the settlement, Bondholder Plaintiffs' Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Preliminary Approval Order and any other applicable order(s) of the Court, provide Class Members whose identities can be determined after reasonable efforts with notice of the date of the Fairness Hearing, to be scheduled by the Court to consider the fairness, adequacy and reasonableness of the proposed settlement.  The Notice may be sent solely for this settlement or combined with notice of other settlements or of any litigation class.  The Notice shall also explain the general terms of the settlement set forth in this Agreement; the general terms of the proposed Distribution Plan; the general terms of the Fee and Expense Application; and a description of Bondholder Class Members' rights to object to the settlement, request exclusion from the Bondholder Class, and appear at the Fairness Hearing.  Bondholder Plaintiffs' Counsel shall consult with HSBC regarding the text of the Notice before the Notice's submission to the Court for approval thereof.

3.5.    Bondholder Plaintiffs' Counsel shall submit to the Court for its approval a Summary Notice in accord with the Notice, and a plan for publication thereof, and shall cause the Summary Notice, as approved by the Court, to be published in such manner as may be approved by the Court.

3.6.    Subject to the provisions of this Agreement, Counsel for the Settlement Class shall be responsible for arranging for Class Notice, Claims Administration, and distribution of

13

the Settlement Fund, and for obtaining any necessary Court approvals.  Unless agreed to by HSBC in its sole discretion, HSBC shall have no responsibility for providing publication or distribution of the settlement or any notice of the settlement to Bondholder Class Members or for paying for the cost of providing notice of this Settlement to Class Members (except as provided by paragraph 7.3 below).  Bondholder Plaintiffs' Counsel shall consult with HSBC regarding any content directly relating to HSBC that will be used by Bondholder Plaintiffs' Counsel and/or the Claims Administrator in any settlement-related communications, press releases or other media publications, including on websites.

3.7.    If the Preliminary Approval Order is entered by the Court, Bondholder Plaintiffs shall seek, following reasonable consultation and agreement with HSBC, and HSBC shall support, entry of a Judgment that meets all of the following criteria:

(i)     certifies the Settlement Class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) solely for the purpose of the settlement;

(ii)    approves fully and finally the settlement set forth in this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation according to its terms;

(iii)   finds that the Class Notice constituted due, adequate, and sufficient notice of the settlement set forth in this Settlement Agreement and the Fairness Hearing and meets the requirements of due process and the Federal Rules of Civil Procedure;

(iv)    directs that, as to the Released HSBC Parties, the Released Claims shall be released and the Bondholder Action shall be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs; provided, however,

14

that such dismissal shall not affect, in any way, the right of Bondholder Plaintiffs or Bondholder Class Members to pursue claims against other Defendants and claims, if any, outside the scope of the Released Claims;

(v)     orders that the Releasing Parties are permanently enjoined and barred from instituting, commencing, or prosecuting any action, arbitration, or other proceeding asserting any Released Claims against any Released HSBC Party;

(vi)    bars claims by any Person against any Released HSBC Party for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Bondholder Action by way of settlement, judgment, or otherwise;

(vii)   retains with the Court continuing and exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of the Settlement and all future proceedings relating thereto;

(viii)  determines under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to HSBC and HSBC Holdings plc shall be final and entered forthwith; and

(ix)    contains such other and further provisions consistent with the terms of this Agreement to which the Settling Parties expressly consent in writing.

## 4. EFFECTIVE DATE OF SETTLEMENT.

4.1.    The Effective Date of Settlement shall be the date when all of the following events shall have occurred and shall be conditioned on the occurrence of all of the following events: (i) the payment by HSBC to the Settlement Fund has been made pursuant to this Agreement; (ii) entry of the Preliminary Approval Order; (iii) final approval by the Court of the

settlement set forth in this Agreement, following Class Notice and the Fairness Hearing; (iv) no Party has exercised his, her, or its rights to terminate this Agreement pursuant to paragraph 10 below; and (v) entry by the Court of a Judgment, and the Judgment becomes Final, or, in the event that the Court enters an Alternative Judgment and neither Bondholder Plaintiffs nor HSBC elects to terminate this Agreement, and such Alternative Judgment becomes Final.

4.2.    Notwithstanding any other provision herein, any proceeding or order, or motion for reconsideration, appeal, or petition for a writ of certiorari or its equivalent, pertaining solely to any Distribution Plan and/or Fee and Expense Application, shall not in any way delay or preclude the Effective Date.

4.3.    The terms and covenants of this Agreement shall survive entry and finality of the Judgment or Alternative Judgment.

## 5.  CLAIMS ADMINISTRATOR.

5.1.    Pursuant to the Preliminary Approval Order and subject to Court approval, Bondholder Plaintiffs' Counsel shall engage the Claims Administrator.

5.2.    The Claims Administrator shall, under the direction of the Court and/or Bondholder Plaintiffs' Counsel, take all steps reasonably necessary to effectuate the notice plan approved by order(s) of the Court, assist in the development of the Distribution Plan, assist in the identification of Bondholder Class Members, administer and calculate the claims submitted by Bondholder Class Members, oversee distribution of the Net Settlement Fund to Authorized Claimants in accordance with the Distribution Plan, and perform such other tasks and duties as directed by the Court and/or Bondholder Plaintiffs' Counsel to effectuate this Agreement (collectively, "Claims Administration").

6.  **FEE AND EXPENSE APPLICATION.**

6.1.    At the time Bondholder Plaintiffs' Counsel submit an application or applications (the "Fee and Expense Application") to the Court for an award from the Settlement Fund, such application will seek: (i) attorneys' fees not in excess of 33-1/3% of the Settlement Amount; and (ii) reimbursement of litigation expenses, plus interest, incurred in connection with the prosecution of the Bondholder Action.  In addition, Bondholder Plaintiffs' Counsel may also seek service awards to Bondholder Plaintiffs in conjunction with their representation of the Bondholder Class in this litigation.  HSBC will take no position regarding the Fee and Expense Application or any request for service awards to Bondholder Plaintiffs.

6.2.    Attorneys' fees, expenses, service awards and interest as are awarded by the Court ("Fee and Expense Award") shall be paid from the Settlement Fund to Bondholder Plaintiffs' Counsel immediately upon entry by the Court of an order awarding such amounts, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Bondholder Plaintiffs' Counsel's joint and several obligation to repay those amounts to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Fund is required consistent with the provisions of paragraph 10.3 below.  In such event, Bondholder Plaintiffs' Counsel shall, within ten (10) business days from the event which requires repayment of the Fee and Expense Award, refund to the Settlement Fund the Fee and Expense Award paid to them, along with interest thereon at the same rate at which interest is accruing in the Settlement Fund.

6.3.    Notwithstanding any other provision of this Agreement to the contrary, the parties

17

shall request that the Fee and Expense Application be considered by the Court separate and apart from its consideration of the fairness, reasonableness, and adequacy of the settlement, and that any order or proceeding relating to the Fee and Expense Application, or any appeal of any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement or the settlement of the Bondholder Action, or affect or delay the finality or binding nature of any of the releases granted hereunder.   The Released HSBC Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees or expenses to Bondholder Plaintiffs' Counsel and/or to any other Person who may assert some claim thereto, or any Fee and Expense Award that the Court may make in this Action.

6.4.    Bondholder Plaintiffs and Bondholder Plaintiffs' Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses relating to this settlement, including, but not limited to, attorneys' fees and past, current or future litigation expenses, and any service award approved by the Court.   The Released HSBC Parties shall have no responsibility for any costs, fees or expenses incurred for or by the Bondholder Plaintiffs' or Bondholder Class Members' respective attorneys, experts, advisors, agents or representatives other than as set forth in paragraph 7.3.

## 7.  THE SETTLEMENT FUND.

7.1.    The Escrow Agent shall administer the Settlement Fund pursuant to this Agreement and subject to the Court's continuing supervision and control.   No monies shall be paid from the Settlement Fund without the specific authorization of Bondholder Plaintiffs' Counsel.   Counsel for the Parties agree to cooperate, in good faith, to form an appropriate escrow agreement in conformance with this Agreement.

7.2.    HSBC shall pay the Settlement Amount into the Settlement Fund, which shall

constitute the sole recovery against any of the Released HSBC Parties.  None of the Released HSBC Parties shall have any obligation to make any further payment.  Under no circumstances will HSBC be required to pay more than the Settlement Amount.  Attorneys' fees, costs, incentive payments to class representatives, expenses of Class Notice and Claims Administration, any Fee and Expense Award, Taxes and tax expenses, Escrow Agent costs, and any other costs associated with the implementation of this Settlement Agreement shall be paid exclusively out of the Settlement Fund.

7.3.    Up to $500,000 of the Settlement Amount may be used to effectuate the notice and administration of the Settlement, including but not limited to: (i) the retention and work of the Claims Administrator and/or experts in connection with the development of a plan of allocation and distribution; (ii) the retention and work of the Claims Administrator in connection with the provision of Notice, claims review and distribution of the Settlement Amount; and (iii) acquisition from an appropriate source of data regarding U.S. Dollar LIBOR-Based Debt Securities in connection with the allocation of the Settlement Fund (collectively, "Notice and Administration Costs").  If for any reason the Settlement Agreement fails to become effective, the amounts paid or incurred for any Notice and Administration Costs shall not be recoupable by HSBC from Bondholder Plaintiffs' Counsel or any other person.

7.4.    HSBC shall cause the payment of the Settlement Amount to be made to the Escrow Agent by wire transfer within fifteen (15) business days following the Court's entry of the Preliminary Approval Order, provided that within five (5) business days following the Court's entry of the Preliminary Approval Order, Bondholder Plaintiffs' Counsel shall provide HSBC with such information as HSBC may require to complete the wire transfer.

7.5.    This Settlement is not a claims-made settlement, and if all conditions of the

19

Settlement are satisfied and the Judgment is entered and becomes Final, no portion of the Settlement Fund will be returned to HSBC. If any portion of the Net Settlement Fund remains following distribution pursuant to paragraph 8 and is of such an amount that, in the discretion of the Claims Administrator in coordination with Bondholder Plaintiffs' Counsel, it is not cost effective or efficient to redistribute to the Bondholder Class, then such remaining funds, after payment of any further notice and administration costs and Taxes and Tax Expenses and other costs and expenses related to the Action, shall be donated to a non-profit charitable organization selected by Bondholder Plaintiffs' Counsel and approved by the Court.

7.6. Without prejudice to the Bondholder Plaintiffs' right to seek enforcement of this Agreement by motion or otherwise, if the Settlement Amount is not timely received by the Bondholder Plaintiffs' Counsel, then Bondholder Plaintiffs' Counsel may terminate this Agreement if the following occur: (i) Bondholder Plaintiffs' Counsel has notified HSBC's Counsel in writing of Bondholder Plaintiffs' Counsel's intention to terminate this Agreement, and (ii) the entire Settlement Amount is not received into the Settlement Fund within ten (10) business days after Bondholder Plaintiffs' Counsel has provided such written notice.

7.7. The Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.

7.8. All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such

time as such funds shall be distributed pursuant to this Settlement Agreement and the Distribution Plan approved by the Court.

    7.9.    The Settlement Fund shall be applied as follows:

(i)    to pay all the costs and expenses reasonably and actually incurred in connection with providing Class Notice and the administration of the Settlement, including, without limitation, locating members of the Bondholder Class, soliciting Bondholder Class Members' claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, and processing proof of claim and release forms;

(ii)    to pay the Taxes and Tax Expenses described in paragraph 9.3 hereof;

(iii)    to pay Escrow Agent costs;

(iv)    to pay the cost for the acquisition of data necessary to develop a Distribution Plan;

(v)    to pay any other Court-approved fees and expenses;

(vi)    to pay any Fee and Expense Award, if and to the extent allowed by the Court;

(vii)    to pay any service award;

(viii)    to pay all costs and expenses reasonably and actually incurred in assisting Settlement Class Members with the filing and processing of claims; and

(ix)    to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants for the Bondholder Class, as allowed by the Court pursuant to the Class Distribution Order.

    7.10.    With the object of reducing the costs of Class Notice, Bondholder Plaintiffs' Counsel shall use reasonable efforts to coordinate the provision of Class Notice pertaining to this Agreement with the provision of notice for any other settlements that may be reached.  In all

events, HSBC shall have no liability for the costs of Class Notice beyond those set forth in paragraph 7.3 above.

## 8. DISTRIBUTION OF THE NET SETTLEMENT FUND.

8.1.    At a time and in a manner determined by the Court, Bondholder Plaintiffs' Counsel shall submit for Court approval a Distribution Plan for the Bondholder Class that will provide for the distribution of the Net Settlement Fund in accordance with the following:

(i)     The Distribution Plan will establish eligibility and the procedures for allocation and distribution of the Net Settlement Fund.

(ii)    Except as otherwise ordered by the Court, each Bondholder Class Member who fails to submit a Proof of Claim and Release within such period as may be ordered by the Court or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Settlement Agreement and the Settlement set forth herein, but shall in all other respects be subject to and bound by the provisions of this Agreement, the releases contained in this Settlement Agreement, and the Judgment.

(iii)   The Net Settlement Fund shall be distributed to Authorized Claimants, and in no event shall there be any reversion to HSBC except as expressly provided for herein this Settlement Agreement.  The distribution to Authorized Claimants shall be substantially in accordance with the Distribution Plan to be approved by the Court upon such further notice to the Bondholder Class as may be required.  Any such Distribution Plan is not a part of this Agreement.  No funds from the Net Settlement Fund shall be distributed to Authorized Claimants until the Effective Date.

(iv)   Each Class Member shall be subject to and bound by the provisions of this Agreement, the releases contained herein, and the Judgment, regardless of whether such Class Member seeks or obtains by any means, including, without limitation, by submitting a Proof of Claim and Release or any similar document, any distribution from the Net Settlement Fund.

(v)   Except for the obligation to fund the settlement or cause it to be funded as detailed in this Settlement Agreement, HSBC shall have no liability, obligation, or responsibility for the administration of the settlement or disbursement of the Net Settlement Fund.

8.2.   Bondholder Plaintiffs' Counsel will apply to the Court for the Class Distribution Order.

8.3.   Subject to paragraph 7.5 above, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) following distribution pursuant to paragraph 8.1, Bondholder Plaintiffs' Counsel shall submit an additional Distribution Plan to the Court for approval.

8.4.   Each claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, and the claim will be subject to investigation and discovery pursuant to the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that claimant's status as a Class Member and the validity and amount of the claimant's claim.  Other than the obligations set forth in paragraph 13, no discovery shall be allowed to be directed to HSBC or any of the Released HSBC Parties, and no discovery shall be allowed on the merits of the Action or settlement in connection with processing of the proofs of claim.

**9. TAXES.**

9.1.     The Settling Parties agree and the Escrow Agent will agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B–l.   All elections as necessary or advisable to carry out the provisions of this paragraph 9, including the "relation-back election" (as defined in Treas. Reg. § 1.468B–l) back to the earliest permitted date shall be made on a timely basis.   Such elections shall be made in compliance with the procedures and requirements contained in such regulations.   It shall be the responsibility of the Escrow Agent to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

9.2.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.   The Escrow Agent shall satisfy the administrative requirements imposed by Treas. Reg. §1.468B–2 by, *e.g.*, (i) obtaining a taxpayer identification number, (ii) satisfying any information reporting or withholding requirements imposed on distributions from the Settlement Fund, and (iii) timely and properly filing applicable federal, state and local tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B–2(k)) and paying any taxes reported thereon.   Such returns (as well as the election described in this paragraph 9) shall be consistent with this paragraph 9 and, in all events, shall reflect that all Taxes, as defined in paragraph 9.3, below, on the income earned by the Settlement Fund shall be paid from the Settlement Fund.

9.3.     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including, without limitation, any taxes or

24

tax detriments that may be imposed upon HSBC or its counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (collectively, "Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this paragraph 9, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph 9 (collectively, "Tax Expenses"), shall be paid from the Settlement Fund; in all events, HSBC and its counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  Solely with funds from the Settlement Fund, the Escrow Agent shall indemnify and hold harmless HSBC and its counsel for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).

9.4.    Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall timely be paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B–2(I)(2)); neither HSBC nor its counsel is responsible therefor, nor shall they have any liability therefor.  The Settling Parties agree to cooperate with the Escrow Agent, each other, and their respective tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph 9.

9.5.    Neither the Parties nor their counsel shall have any responsibility for or liability whatsoever with respect to: (i) any act, omission or determination of the Escrow Agent or Claims

Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement Fund or otherwise; (ii) the Distribution Plan; (iii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (iv) any losses suffered by, or fluctuations in the value of, the Settlement Fund; or (v) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns. The Escrow Agent shall indemnify and hold harmless the Parties out of the Settlement Fund from and against any claims, liabilities, or losses relating to the matters addressed in the preceding sentence.

## 10. TERMINATION OF THE SETTLEMENT.

10.1.   Bondholder Plaintiffs, through Bondholder Plaintiffs' Counsel, and HSBC, through HSBC's Counsel, shall, in each of their separate discretions, have the right to terminate the settlement set forth in this Agreement by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within thirty (30) days of the date on which any of the following occurs:

(i)     the Court enters an order declining to enter the Preliminary Approval Order in any material respect;

(ii)    the Court enters an order refusing to approve this Settlement Agreement or any material part of it;

(iii)   the Court enters an order declining to enter the Judgment in any material respect;

(iv)    the Court enters an Alternative Judgment;

(v)     the Judgment is vacated, modified, or reversed by a court of appeal or any higher court in any material respect; or

(vi)    an Alternative Judgment is vacated, modified, or reversed by a court of appeal or

26

any higher court in any material respect.

10.2.    Further, the Bondholder Plaintiffs shall provide a list of those persons, if any, who have filed a request to be excluded from the Settlement Class ("Requests for Exclusion"), together with all such Requests for Exclusion, to HSBC within five (5) business days of the deadline set by the Court for the filing of Requests for Exclusion.  HSBC has the right to terminate the Settlement Agreement if the persons submitting Requests for Exclusion would have been eligible to receive a material portion of the potential distributions from the Settlement Fund (the "Materiality Threshold").  If HSBC decides that it wishes to exercise this right, the Settling Parties shall first meet and confer in good faith.  If the Settling Parties are unable to reach agreement regarding appropriate relief, then HSBC may present the issue of whether the total Requests for Exclusion meet the Materiality Threshold to the Mediator.  The Mediator's determination of whether or not the Requests for Exclusion satisfy the Materiality Threshold such that HSBC may terminate the Settlement Agreement shall be binding on the Settling Parties.

10.3.    Notwithstanding this paragraph 10, the Court's determination solely as to the Fee and Expense Application or any Distribution Plan, or any determination on appeal solely from any such order, shall not provide grounds for termination of this Agreement or settlement. Without limiting the foregoing, HSBC shall have, in its sole and absolute discretion, the option to terminate the Settlement in its entirety if the Judgment, upon becoming Final, would not provide for the dismissal with prejudice of the Action as to HSBC, a full discharge of the Released Claims as to the Released HSBC Parties, and a bar order precluding claims by any Person against the Released HSBC Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of

settlement, judgment, or otherwise..

10.4.   Except as otherwise provided herein, in the event the settlement is terminated in accordance herewith, is vacated, is not approved, or the Effective Date fails to occur for any reason, then the Parties to this Agreement shall be deemed to have reverted to their respective status in the Bondholder Action as of the Execution Date, with all of their respective legal claims and defenses preserved as they existed on that date, including without limitation any objection or defense based on a lack of personal jurisdiction, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered, and any portion of the Settlement Fund previously paid by or on behalf of HSBC, together with any interest earned thereon (and, if applicable, repayment of any Fee and Expense Award referred to in paragraph 6.2 hereof), less any Taxes due, if any, with respect to such income, and less costs of administration and notice actually incurred and paid or payable from the Settlement Fund (subject to the provision of paragraph 7.3 above) shall be returned to HSBC within ten (10) business days from the date of the Termination Notice.  At the request of HSBC's Counsel, the Escrow Agent shall apply for any tax refund owed on the Settlement Fund and pay the proceeds to HSBC.  Neither the existence nor the terms of this Agreement (nor any negotiations preceding this Agreement nor any acts performed pursuant to, or in furtherance of, this Agreement) shall be used in the Bondholder Action or any other lawsuit, arbitration, or other proceeding for any purpose (other than to enforce the terms remaining in effect).

10.5.   Neither HSBC nor HSBC's Counsel shall directly, or indirectly, solicit or encourage any Person to request exclusion from the Settlement Class.

## 11. RELEASES AND COVENANTS NOT TO SUE.

11.1.   Upon the Effective Date, and in exchange for the receipt of the Settlement

Amount and other consideration provided for herein, the sufficiency of which is hereby acknowledged, the Releasing Parties, and any other Person claiming (now or in the future) through or on behalf of any Releasing Party, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released HSBC Parties from any and all Released Claims, and shall be permanently barred and enjoined from instituting, commencing, or prosecuting any such Released Claim in any lawsuit, arbitration or other proceeding against any Released HSBC Party in any court or tribunal in any jurisdiction worldwide, and agrees and covenants not to sue on the basis of the Released Claims, or to assist any third party in commencing or maintaining any such suit related to the Released Claims.  Each Releasing Party shall be deemed to have released all Released Claims against the Released HSBC Parties regardless of whether any such Releasing Party ever seeks or obtains by any means, including, without limitation, by submitting a Proof of Claim and Release, any distribution from the Settlement Fund or Net Settlement Fund.

11.2.   The releases set forth in this Settlement Agreement are given pursuant to New York law and are to be construed under New York law in accordance with Paragraph 15.8 below, including that portion of N.Y. General Obligations Law § 15-108(b) which bars claims for contribution by joint tortfeasors and other similar claims.  This Settlement Agreement is expressly intended to absolve the Released HSBC Parties of any claims for contribution, indemnification, or similar claims from other Defendants or nonparties that could have been named as a defendant in the Action, arising out of or related to the Released Claims, in the manner and to the fullest extent permitted under the law of New York or any other jurisdiction that might be construed or deemed to apply to any claims for contribution, indemnification or similar claims against any Defendant or nonparty that could have been named as a defendant in

29

the Action.  Notwithstanding the foregoing, should any court determine that any Defendant or nonparty that could have been named as a defendant in the Action is/was legally entitled to any kind of contribution or indemnification from any of the Released HSBC Parties arising out of or related to Released Claims, the Releasing Parties agree that any money judgment subsequently obtained by the Releasing Parties against any Defendant or nonparty that could have been named as a defendant in the Action shall be reduced to an amount such that, upon payment of the reduced amount by such Defendant or nonparty that could have been named as a defendant in the Action, the Defendant or nonparty that could have been named as a defendant in the Action would have no claim for contribution, indemnification or similar claims against any of the Released HSBC Parties.

11.3.    Upon the Effective Date of Settlement, and in exchange for entry of the Judgment provided for herein, the sufficiency of which is hereby acknowledged, each of the Released HSBC Parties shall be deemed to have, and by operation of the Judgment shall have fully, finally, and forever released and discharged Bondholder Plaintiffs, Bondholder Plaintiffs' Counsel, and each and all Bondholder Class Members from each and every one of the Settling Defendant's Claims; shall forever be enjoined from instituting, commencing or prosecuting the Settling Defendant's Claims; and agrees and covenants not to sue on the basis of the Settling Defendant's Claims, or to assist any third party in commencing or maintaining any such suit related to the Settling Defendant's Claims; provided, however, this release does not extend to claims regarding the enforcement of this Settlement Agreement or regarding any other contracts or agreements that may exist between any Released HSBC Party and any Bondholder Plaintiff, Bondholder Plaintiff's Counsel, or Bondholder Class Member.

11.4.    The releases provided in this Settlement Agreement shall become effective

30

immediately upon occurrence of the Effective Date of Settlement without the need for any further action, notice, condition, or event.

11.5.   If this Settlement Agreement is terminated pursuant to paragraph 10, or any condition for the final approval of this Agreement is not satisfied, the release and covenant not to sue provisions of the foregoing paragraphs shall be null and void and unenforceable.

## 12. UNKNOWN CLAIMS/CALIFORNIA CIVIL CODE SECTION 1542.

12.1.   With respect to any and all Released Claims and Settling Defendant's Claims, the Parties stipulate and agree that by operation of the Judgment, upon the Effective Date, Releasing Parties and Released HSBC Parties shall have expressly waived, and each Class Member shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, the provisions, rights and benefits of Section 1542 of the California Civil Code.  The releases set forth in paragraph 11 above constitute a waiver of Section 1542 of the California Civil Code (to the extent it applies hereto), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

12.2.   The releases set forth in paragraph 11 above also constitute a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.  The Releasing Parties and the Released HSBC Parties acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally, and forever all of

31

the Released Claims or Settling Defendant's Claims, as the case may be, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts, whether or not concealed or hidden.  In entering and making this Agreement, the Releasing Parties and the Released HSBC Parties assume the risk of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.  Bondholder Plaintiffs and the Released HSBC Parties acknowledge, and Bondholder Class Members shall be deemed to have acknowledged, that the inclusion of unknown claims in the definition of Released Claims and Settling Defendant's Claims was separately bargained for and was a key element of the Settlement Agreement.

## 13. NON-MONETARY CONSIDERATION.

13.1.   **Preliminary Approval**:   HSBC shall cooperate to the extent reasonably necessary in connection with Bondholder Plaintiffs' Counsel's preparation of the motion for preliminary approval and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement.

13.2.   **Applicable Protections**:   Notwithstanding any provision of this Settlement Agreement to the contrary, nothing in this Settlement Agreement shall impose on HSBC an obligation to produce or provide any materials or information protected from disclosure by the work-product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, the bank regulatory or examination privilege, obligations under applicable data privacy, bank secrecy or other similar laws or regulations, and/or any other applicable privilege or protection with respect to any Documents, interviews, declarations and/or affidavits, depositions, testimony, material, and/or information requested under this Settlement Agreement.

32

None of the cooperation provisions are intended to, nor do they, waive any applicable privilege or protection.  Nothing in this Settlement Agreement shall impose on HSBC an obligation to produce or provide any materials or information that would be unduly burdensome to produce or provide or would be disproportionate to the needs of the Action.  Nor shall anything in this Settlement Agreement obligate HSBC to produce any communications with regulatory or governmental authorities who were investigating USD LIBOR-related matters or any documents created during the course of such investigations for the purpose of communicating with or cooperating with these authorities.  HSBC agrees that its counsel will meet with Bondholder Plaintiffs' Counsel as is reasonably necessary to discuss any applicable privilege or protection or the burden associated with any request for cooperation.  The parties retain the right to seek a ruling from the Court with respect to the applicability of any privilege, work product protection, and/or any bank secrecy, data privacy or other similar law.  All cooperation shall be coordinated in such a manner so that any unnecessary duplication and expense is avoided.

    13.3.  **Use of Cooperation Materials:**

        a.  Cooperation Materials may only be used by Bondholder Plaintiffs and/or Bondholder Plaintiffs' Counsel for the prosecution of the Action.

        b.  Any and all Documents, declarations, affidavits, deposition testimony, and information provided to the Bondholder Plaintiffs and/or Bondholder Plaintiffs' Counsel as Cooperation ("Cooperation Materials") shall be covered by the protective order in effect in the Action.  Nothing in this agreement limits the sharing of Cooperation Materials by Bondholder Plaintiffs' Counsel with their own experts and consultants in accordance with relevant protective orders. The Bondholder Plaintiffs' Counsel may disclose Cooperation Materials to Defendants

in the Action during settlement negotiations, provided appropriate measures are taken to maintain their confidentiality.

c.   Bondholder Plaintiffs and Bondholder Plaintiffs' Counsel shall not disclose any Cooperation Materials to any other counsel or party in the USD LIBOR MDL proceeding.   However, Bondholder Plaintiffs' Counsel's may use information contained in Cooperation Materials with other counsel in the USD LIBOR MDL, and with their experts and consultants, where such information is otherwise already in their possession and such use is permissible under the protective order in the Action.

13.4.   **Proffers**:  HSBC's Counsel will meet with Bondholder Plaintiffs' Counsel at a mutually agreeable time and place to provide, on a schedule to be agreed upon by the parties, the following oral proffers to the extent such information is reasonably known to HSBC:

a.   a general description of the USD LIBOR-setting process, including but not limited to the individuals and entities involved, the factors considered in determining HSBC's daily submissions, the BBA's rules governing the USD LIBOR-setting process, and the nature of the USD LIBOR-setting process, as well as a description of the specific factors or information considered in setting HSBC's U.S. Dollar LIBOR submissions on specific dates during the Class Period, as identified by Bondholder Plaintiffs' Counsel;

b.   a description of facts known to HSBC that are relevant to the Released Claims, including but not limited to the alleged conduct, if any such facts exist (including as learned in interviews and testimony, regardless of by whom conducted), relating to the manipulation and suppression of USD LIBOR by HSBC and other panel banks, and the individuals and entities involved in the conduct, the specific locations and dates of key meetings or communications relating to the conduct, including actual words exchanged in such communications or meetings and the identities of the speakers and other participants, and the products and instruments affected by such conduct, and the conduct's effect on HSBC's profitability;

c.   a description of HSBC's relationships with brokers, including identification of brokers with whom HSBC's U.S. Dollar LIBOR submitters communicated and the frequency and nature of those communications;

d.  a description, based on reasonably accessible information, of the benefits, if any, that HSBC received, intended to receive, or may have received, from manipulating LIBOR or from the submission of the U.S. Dollar LIBORs that HSBC did submit during the Class Period;

e.  a description of HSBC's knowledge, if any, of the alleged inter-bank conspiracy to manipulate USD LIBOR, including HSBC's knowledge, if any, of other banks, bank employees, and/or brokers who may have participated or assisted in efforts to manipulate or conspire to manipulate USD LIBOR, and communications relating thereto;

f.  a description of HSBC's role or participation, if any, in conduct for which RBS and Deutsche Bank were charged with price-fixing in violation of the Sherman Act relating to USD LIBOR;

g.  a description of HSBC's internal compliance policies, and any BBA compliance policies of which HSBC has knowledge with respect to USD LIBOR, including policies in effect at the time of the alleged conduct and policies enacted prior to June 27, 2013;

h.  a general description of the market for LIBOR-Based Debt Securities;

i.  subject to applicable laws, the identities and last known contact information of all current and former officers, directors, and employees of HSBC who HSBC has interviewed in connection with the  alleged manipulative or anticompetitive conduct in, or affecting, the USD LIBOR-setting process, with the Parties' express agreement that any information developed or facts obtained by Bondholder Plaintiffs' Counsel from any current or former officer, director or employee whose identity and contact information was provided by HSBC pursuant to this provision, shall be used solely in connection with the litigation of the Bondholder Action;

j.  absent objection of the regulators, the identification of all current and/or former HSBC personnel who were identified by code names in any of the papers released by the governmental bodies pertaining to conduct with respect to USD LIBOR insofar as they are known to HSBC;

k.  reasonable assistance, when requested, in identifying participants in telephonic and other communications produced to the Bondholder Plaintiffs by HSBC;

l.  the identities and last known contact information of all current and former officers, directors, and employees of HSBC who have been disciplined or dismissed by HSBC in connection with USD LIBOR-related conduct;

m.  the identities and relationship to USD LIBOR of employees of HSBC who were interviewed by HSBC relating to USD LIBOR, the nature and location of relevant

35

Documents collected or reviewed by HSBC in connection with any investigation relating to USD LIBOR, and the manner in which HSBC maintains and stores Documents and other information relevant to the asserted claims;

13.5.   **Counsel Inquiries**:   HSBC's counsel will respond to all reasonable follow-up inquiries of Bondholder Plaintiffs' Counsel throughout the duration of this Action, including to produce further material, information, and Documents relating to USD LIBOR, fully recognizing that this cooperation is a significant portion of the value of the settlement to the Bondholder Class.   HSBC shall also use good faith efforts to make its relevant employees available to assist HSBC's Counsel in responding to such inquiries from Bondholder Plaintiffs' Counsel.

13.6.   **Transactional Data**:

a.   HSBC will use its best efforts to produce all reasonably requested transactional data and bid and ask pricing data related to the subject matter of the Bondholder Action that is in HSBC's possession or control, to the extent any such data is reasonably accessible, and subject to any applicable bank secrecy and/or data privacy laws.   Transactional data will include, but not be limited to, HSBC'S transactions indicating the rates at which HSBC was actually able to borrow funds in the London inter-bank market during the Class Period.   Bid and ask pricing data will include, but not be limited to, bid and ask or bid and offer pricing data for all tenors of U.S. Dollar LIBORs during the Class Period.   Should any such data be in the possession of a third party, HSBC shall not unreasonably refuse to provide consent to that third party's disclosure of such data to the Bondholder Plaintiffs, and shall respond to questions regarding such data, whether produced by HSBC or a third party.

b.   The Settling Parties shall agree on a schedule to meet and confer about production by HSBC of transactional and bid and ask pricing data.

c.   Over the course of HSBC'S cooperation obligation, HSBC shall use good faith efforts to make available its current personnel or in-house experts at reasonable times, to assist HSBC's Counsel in answering questions from Bondholder Plaintiffs' Counsel about HSBC's bid and ask pricing data and HSBC's transactional data.

d.   HSBC shall provide a list by CUSIP numbers of all U.S. Dollar LIBOR-Based Debt Securities issued by HSBC or known by HSBC to have been issued by any subsidiary or affiliate of HSBC that were outstanding during the Class Period.

13.7.   **Documents**:

    a.   To the extent that it has not already done so, HSBC shall provide authorization for the Bondholder Plaintiffs to access all documents that it has already produced to other plaintiffs in the USD LIBOR MDL, including but not limited to all documents that HSBC previously produced or made available to the Department of Justice, U.S. Commodity Futures Trading Commission, and U.K. Financial Services Authority and any other governmental regulator with respect to their investigations regarding alleged manipulative or anticompetitive conduct in, or affecting, the USD LIBOR-setting process, but not documents created during the course of the investigation for the purpose of communicating with or cooperating with these authorities.   Should any documents relevant to the Action but not previously produced to plaintiffs in the USD LIBOR MDL be in the sole possession of a third party, HSBC shall not unreasonably refuse to provide consent to that third party's disclosure of such documents to the Bondholder Plaintiffs.   For the avoidance of doubt, HSBC will not authorize any third party to disclose documents that are duplicative of documents otherwise within HSBC's possession, custody or control and which HSBC has or will provide to Plaintiffs. Nothing in this paragraph is intended to limit the cooperation obligations set forth in Paragraph 13(7)(e) below.

    b.   At Bondholder Plaintiffs' Counsel's request, HSBC will use good faith efforts to produce additional reasonably requested and reasonably accessible Documents in a mutually agreeable electronic format.

    c.   For all Documents produced by HSBC pursuant to this Settlement Agreement that are not in English, HSBC shall provide any certified or uncertified English translations of such Documents it has available. HSBC is not obligated to create any new translations of Documents for use by the Bondholder Plaintiffs or Bondholder Plaintiffs' Counsel.

    d.   As applicable and upon reasonable request, HSBC shall provide a business record or authenticity declaration as to any Documents produced by HSBC pursuant to this Settlement Agreement.

13.8.   **Production in Other USD LIBOR MDL Actions:**   Subject to any bank secrecy, data privacy, or other objections that HSBC may interpose, HSBC will contemporaneously produce to Plaintiffs all discovery, including but not limited to Documents, Transactional Data, responses to interrogatories, requests for production, and requests for admissions, and responses 30(b)(6) requests and questions that HSBC produces to or has produced to any other plaintiff in

the USD LIBOR MDL, but not including downstream transaction data or documents or data relevant only to a particular party's individual dispute.  The Settling Parties retain the right to seek a ruling from the Court with respect to the applicability of any privilege, work product protection, and/or any bank secrecy or data privacy law.

13.9.  **Declarations and Affidavits**: HSBC will use its good faith efforts to provide declarations, certifications, or affidavits reasonably requested by Bondholder Plaintiffs' Counsel regarding the authentication of documents, including their certification as records of a regularly conducted activity pursuant to Rule 803(6) of the Federal Rules of Evidence.

13.10.  **Depositions**:

    a.  HSBC shall use its good faith efforts to make available for deposition in the Action up to three (3) current employees of HSBC reasonably requested by Bondholder Plaintiffs' Counsel.  For the avoidance of doubt, the number of depositions requested by the Bondholder Plaintiffs pursuant to this Section shall include any depositions in the USD LIBOR MDL cross-noticed by the Bondholder Plaintiffs' Counsel; however, participation by Bondholder Plaintiffs' Counsel in any depositions otherwise noticed by other plaintiffs in the USD LIBOR MDL shall not count against this total, and HSBC shall not challenge Bondholder Plaintiffs' Counsel's participation in any such otherwise noticed depositions.  The Bondholder Plaintiffs agree to use their best efforts to coordinate any deposition taken pursuant to this Section with any other depositions taken in the USD LIBOR MDL to ensure, so far as is possible, that any employee of HSBC is deposed no more than once in connection with the USD LIBOR MDL.

    b.  At Bondholder Plaintiffs' Counsel's request and for good cause, HSBC will meet and confer regarding additional individuals, but failing agreement, the Settling Parties will seek resolution by the Mediator.

    c.  HSBC shall use good faith efforts to assist Bondholder Plaintiffs' Counsel in arranging for depositions with former employees of HSBC that have been reasonably requested by Bondholder Plaintiffs' Counsel.

13.11.  **Subpoenaing Current and Former HSBC Employees:**  Bondholder Plaintiffs may subpoena any current or former HSBC employees to provide testimony in connection with

any court proceeding, including class certification, summary judgment or trial in the Action and HSBC agrees not to object to such subpoenas on the grounds of relevance or burden.

13.12. **Continuation, Scope, and Termination of HSBC's Obligation**:   HSBC's obligations to cooperate under this Settlement Agreement are continuing until and shall terminate upon the date when final judgment has been rendered, with no remaining rights of appeal, in the Action against HSBC and against each and all of the other Defendants, or the Action has otherwise terminated as to HSBC and each and all of the other Defendants with no remaining rights of appeal.

13.13. **Mediation**:   In the event of a disagreement between HSBC and Bondholder Plaintiffs' Counsel with respect to any cooperation obligation, the Settling Parties will seek resolution from the Mediator, if necessary.

13.14. **Documents Withheld From Production**:   For any Documents withheld from production based on privilege, immunity, or other reason, HSBC shall provide notice to Bondholder Plaintiffs' Counsel describing the general nature and quantity of each category of such Documents and a general statement of the reason for their non-production, and shall, if directed by the Mediator, create a privilege log describing withheld Documents in sufficient detail so as to explain the nature of the privilege asserted or the basis of any law, regulation, policy, or other rule of any governmental body protecting disclosure of such Documents.

## 14. RESERVATION OF BONDHOLDER CLASS MEMBERS' RIGHTS AGAINST OTHER DEFENDANTS.

14.1.   All rights of Bondholder Plaintiffs and any Bondholder Class Member against other former, current, or future Defendants or co-conspirators, or any other Person other than the Released HSBC Parties, with respect to any of the Released Claims are specifically reserved by

39

Bondholder Plaintiffs and the Bondholder Class Members except as provided in section 11.2.

**15. MISCELLANEOUS.**

15.1.   The Parties to this Agreement intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Bondholder Plaintiffs and any Bondholder Class Member against the Released HSBC Parties with respect to the Bondholder Action and the Released Claims.   Accordingly, Bondholder Plaintiffs and HSBC agree not to assert in any judicial proceeding that the Bondholder Action was brought by Bondholder Plaintiffs or defended by HSBC in bad faith or without a reasonable basis.   The Parties further agree not to assert in any judicial proceeding that any Party violated Federal Rule of Civil Procedure 11 in connection with the Bondholder Action.   The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's length in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent and experienced legal counsel.

15.2.   The headings herein are used for convenience only and are not meant to have legal effect.

15.3.   The Settling Parties consent to jurisdiction in the United States District Court for the Southern District of New York solely for the specific purpose of any suit, action or proceeding to interpret or enforce the terms of the Settlement Agreement.   For avoidance of doubt, HSBC expressly preserves its right to challenge personal jurisdiction in the Action should the Effective Date not occur.

15.4.   The Settlement Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations

40

between the Settling Parties and that all Settling Parties have contributed substantially and materially to the preparation of the Settlement Agreement.

15.5.   This Agreement shall constitute the entire agreement between Bondholder Plaintiffs and HSBC pertaining to the settlement of the Bondholder Action against HSBC and supersedes any and all prior and contemporaneous undertakings of Bondholder Plaintiffs and HSBC in connection therewith.   No representations, warranties or inducements have been made to any Settling Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.   All terms of this Agreement are contractual and not mere recitals.   The terms of this Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties hereto including any Bondholder Class Members.   Without limiting the generality of the foregoing, each and every covenant and agreement herein by Bondholder Plaintiffs, and Bondholder Plaintiffs' Counsel, shall be binding upon all Class Members.

15.6.   This Agreement shall not be modified or amended in any respect except by a writing executed by Bondholder Plaintiffs, through Bondholder Plaintiffs' Counsel, and HSBC, through HSBC's Counsel, subject (if after preliminary or final approval by the Court) to approval by the Court.   Amendments and modifications may be made without notice to the Bondholder Class unless notice is required by law or by the Court.

15.7.   Entry into the Settlement Agreement shall not constitute or be cited as evidence of an admission, acknowledgement or concession by any party as to the merit or lack of merit of any claim or defense that has been or could have been asserted in the Action.   The Settling

41

Parties agree to not make any public statements that assert or imply otherwise.  No evidence as to the fact or terms of the Settlement Agreement shall be admissible in any proceeding or for any purpose other than in connection with any attempt by any party to enforce the terms of the Settlement Agreement.  The limitations described in this paragraph 15.7 apply whether or not the Court enters the Preliminary Approval Order, the Final Approval Order or the Judgment.

15.8.   The terms of this Settlement Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of law principles.

15.9.   The Parties acknowledge that this Agreement makes no determination as to which Bondholder Class Members are entitled to any distribution from the Net Settlement Fund or as to the formula for determining the amounts to be distributed.

15.10.  The proposed Distribution Plan is not a necessary term of this Agreement, and it is not a condition of this Agreement that any particular Distribution Plan be approved.  The Released HSBC Parties shall take no position with respect to the proposed Distribution Plan or such Distribution Plan as may be approved by the Court.  The Distribution Plan is a matter separate and apart from the settlement between the Settling Parties, and any decision by the Court solely concerning a particular Distribution Plan shall not affect the validity or finality of the proposed settlement, including the scope of the release.

15.11.  If any disputes arise out of finalization of the settlement documentation or of the settlement itself, said disputes are to be resolved by the Mediator, first by way of mediation, and if mediation is unsuccessful, then by way of final, binding non-appealable arbitration before the Mediator.

15.12.  This Agreement may be executed in one or more counterparts by Bondholder

Plaintiffs and HSBC, and all executed counterparts and each of them shall be deemed to be one and the same instrument.  A facsimile or "pdf" signature shall be deemed an original signature for purposes of executing this Agreement.

15.13.  Bondholder Plaintiffs and HSBC acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this Agreement to the extent they have deemed it necessary to do so.  Therefore, Bondholder Plaintiffs and HSBC, and their respective counsel, agree that they will not seek to set aside any part of this Agreement on the grounds of mistake.  Moreover, Bondholder Plaintiffs and HSBC, and their respective counsel, understand, agree, and expressly assume the risk that any fact may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

15.14.  The Settling Parties agree not to disclose the substance of the negotiations that led to the Settlement Agreement including the merits of any positions taken by any party except as necessary to provide the Court with information necessary to consider approval of the Settlement Agreement.

15.15.  Each of the undersigned attorneys represents that she or he is fully authorized by her or his client(s) to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.  Bondholder Plaintiffs' Counsel, on behalf of Bondholder Plaintiffs, represent that they are, subject to Court approval, authorized to take all action required or permitted to be taken by or on behalf of the Bondholder Class pursuant to this Agreement to effectuate its terms and to enter into and execute this Agreement and any modifications or

amendments to the Agreement on behalf of the Bondholder Class that they deem appropriate. Each of the undersigned attorneys shall use her or his best efforts to effectuate this Agreement.

**16. SIGNATURES.**

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Agreement as of the date first herein written above.

By

Karen L. Morris
Patrick F. Morris
R. Michael Lindsey
MORRIS AND MORRIS LLC
COUNSELORS AT LAW
4001 Kennett Pike, Suite 300
Wilmington, DE 19807
Tel: (302) 426-0400
kmorris@morrisandmorrislaw.com
pmorris@morrisandmorrislaw.com
rmlindsey@morrisandmorrislaw.com

By:

David H. Weinstein
Robert S. Kitchenoff
WEINSTEIN KITCHENOFF & ASHER LLC
100 South Broad Street, Suite 705
Philadelphia, PA 19110-1061
Tel: (215) 545-7200
weinstein@wka-law.com
kitchenoff@wka-law.com

*Bondholder Plaintiffs' Counsel on behalf of*
*Bondholder Plaintiffs individually and the*
*Bondholder Class*

By  Roger B Cowie  by JMG

Roger B. Cowie
Locke Lord LLP
2200 Ross Avenue Suite 2800
Dallas, Texas  75201
Tel: :  214-740-8614
Email:  rcowie@lockelord.com

*Counsel for Defendant HSBC Bank plc*

45