## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| IN RE LIBOR-BASED FINANCIAL ) | MDL No. 2262 |
| INSTRUMENTS ANTITRUST LITIGATION ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| ) | |
| THIS DOCUMENT RELATES TO: ) | Master File No. 1:11-md-02262-NRB |
| Case No. 12-CV-1025 (NRB) ) | ECF Case |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

### MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARD FOR BONDHOLDER PLAINTIFFS

Karen L. Morris (Bar No. 1939701)
Patrick F. Morris
MORRIS AND MORRIS LLC
    COUNSELORS AT LAW
4023 Kennett Pike, # 254
Wilmington, DE  19807
Tele: (302) 426-0400
Email: *kmorris@morrisandmorrislaw.com*
       *pmorris@morrisandmorrislaw.com*

David H. Weinstein
Robert S. Kitchenoff
WEINSTEIN KITCHENOFF & ASHER LLC
150 Monument Road, Suite 107
Bala Cynwyd, PA  19004
Tele: (215) 545-7200
Email: *weinstein@wka-law.com*
       *kitchenoff@wka-law.com*

*Attorneys for Plaintiffs*
*Ellen Gelboim and Linda Zacher*

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 2

II.   BACKGROUND ................................................................................................ 2

III.  ARGUMENT ..................................................................................................... 4

      A.    The Fee Request is Fair and Reasonable ................................................. 4

            1.    Class Counsel Are entitled to Fees from the Common Fund ................. 4

            2.    The Requested Fee is Fair and Reasonable Under the Percentage
                  Method-the Method Preferred in the Second Circuit ........................... 5

                  1.    The Percentage Method is Preferred in the Second Circuit ...... 5
                  2.    The Fee Requested is Fair and Reasonable ................................ 6
                  3.    The Requested Fee is Reasonable under a Lodestar
                        Crosscheck ................................................................................. 7
                  4.    The Goldberger Factors Support the Requested Fee Award .... 9
                        (1)    Time & Labor Expended by Counsel (Goldberger
                               Factor 1) ........................................................................ 10
                        (2)    Magnitude & Complexity of the Litigation
                               (Goldberger Factor) ....................................................... 12
                        (3)    Risk of the Litigation (Goldberger Factor 3) ............... 13
                               (i)     Contingency Risk ............................................... 13
                               (ii)    Liability Risk ...................................................... 15
                               (iii)   Damages Risk ..................................................... 16
                        (4)    Quality of the Representation (Goldberger
                               Factor 4) ........................................................................ 17
                        (5)    Requested Fee in Relation to the Settlement
                               (Goldberger Factor 5) .................................................... 18
                        (6)    Public Policy Considerations (Goldberger
                               Factor 6) ........................................................................ 18

      B.    The Request for Reimbursement of Litigation Expenses is Reasonable ........ 19

      C.    Service Awards for the Named Plaintiffs are Appropriate ............................ 21

IV.   CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

*Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505 (S.D.N.Y. June 1, 2012) ............18, 20, 23

*Arbuthnot v. Pierson*, 607 Fed. Appx. 73 (2d Cir. 2015) .................................................................7

*Athale v. Sinotech Energy Ltd.*, No. 11-cv-05831, 2013 WL 11310686
    (S.D.N.Y. Sept. 4, 2013) ...............................................................................................5, 20

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).........................................................................4

*Citiline Holdings, Inc. v. iStar Fin., Inc.*, No. 1:08-cv-03612-RJS, (S.D.N.Y. Apr. 5, 2013) ........6

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).................................................14, 15

*City of Providence v. Aéropostale, Inc.*, 11 Civ. 7132 (CM), 2014 U.S. Dist. LEXIS 64517
    (S.D.N.Y. May 9, 2014)..................................................................................................7

*Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252 (2d Cir. 1989) ..........................20

*Dial Corp. v. News Corp.*, 317 F.R.D. 426 (S.D.N.Y. 2016) ........................................................21

*Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001)........................................23

*Duchene v. Michael Cetta, Inc.,* No. 06-cv-4576, 2009 WL 5841175
    (S.D.N.Y. Sept. 10, 2009)................................................................................................23

*Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 WL 10847814
    (S.D.N.Y. Sept. 9, 2015)...............................................................................5, 14, 18, 21

*Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194 (SAS), 2011 WL 671745
    (Feb. 23, 2011)...............................................................................................................5

*Fresno County Emp'ees. Ret. Ass'n v. Isaacson*, 925 F.3d 63 (2d Cir. 2019)............................14

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).........................5, 8, 10, 13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...............................................................................18

*Hicks v. Stanley*, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................................19

*In re Bank of Am. Corp. Secs., Derivatives & ERISA Litig.*, 2013 WL 12091355
    (S.D.N.Y. Apr. 8, 2013).................................................................................................21

*In re Beacon Assocs. Litig.*, No. 09 Civ. 777(CM), 2013 WL 2450960
    (S.D.N.Y. May 9, 2013)...................................................................................................5

*In re BHP Billiton Secs. Litig.*, 2019 U.S. Dist. LEXIS 63598 (S.D.N.Y. Apr. 10, 2019)..............6

*In re BioScrip, Inc. Secs. Litig.*, No. 13-cv-6922 (AJN), 2017 WL 3208941
    (S.D.N.Y. July 26, 2017) .................................................................5, 8

*In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371 (S.D.N.Y. 2013) ......................................21

*In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2017).........21

*In re Deutsche Telekom AG Secs. Litig.*, 2005 WL 7984326 (S.D.N.Y. June 14, 2005) ...............7

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, No. 12-2389, 2015 U.S. Dist. LEXIS
    152668 (S.D.N.Y. Nov. 9, 2015) .........................................................6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550 (S.D.N.Y. 2010)...................17

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) .............................8

*In re High-Crush Ptrs. L.P. Secs. Litig.*, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .............14

*In re Initial Pub. Offering Secs. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) ....................5, 8, 21

*In re Intercept Pharm., Inc. Sec. Litig.*, No. 1:14-cv-01123-NRB, 2016 U.S. Dist.
    LEXIS 138413 (S.D.N.Y. Sep. 8, 2016)...............................................6

*In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002).................9

*In re Marsh & McLennan Companies, Inc. Secs. Litig.*, No. 04 Civ. 8144 (CM),
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................6

*In re Municipal Derivatives Antitrust Litig.* No. 08-cv-2516 (S.D.N.Y. Dec. 14, 2012).........6

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998)......................17

*In re Online DVD Rental Antitrust Litig.*, No. 09-md-2029 (N.D. Cal. Sept. 2, 2011)...........15, 16

*In re Online DVD Rental Antitrust Litig.*, 2011 WL 5883772 (N.D. Cal. Nov. 23, 2011)............15

*In re Sadia S.A. Sec. Litig.,* No. 08 Civ. 9528 (SAS), 2011 U.S. Dist. LEXIS 149107
    (S.D.N.Y. Dec. 28, 2011) ...................................................................6

*In re Sumitomo*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999)..................................................................19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07–1827 SI, 2013 WL 1365900
    (N.D. Cal. Apr. 3, 2013) ................................................................7, 21

*In re Vitamins Antitrust Litig.*, Case No. 99-197 (TFH), 2001 WL 34312839 (D.D.C. 2001)......20

*In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514
    (E.D.N.Y. Oct. 23, 2012) ...........................................................................................4, 6, 13

*In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d................................................................18, 19

*Johnson v. Brennan*, No. 10 Civ. 4712(CM), 2011 WL 4357376
    (S.D.N.Y. Sept. 16, 2011) .................................................................................................5

*Luciano v. Olsten Corp.*, 109 F.3d 111 (2d Cir. 1997) .....................................................9

*Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .....................................15

*Park v. The Thomson Corp.*, 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) ................................16

*Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139 (1968) .....................19

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124
    (S.D.N.Y. Apr. 16, 2012)...........................................................................................9, 23

*Sykes v. Harris*, 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ....................................................16

*Taft v. Ackermans*, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ................................................18

*Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256 (2d Cir. 2011) ...........................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................5, 10, 12

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ....................................17

*Yap v. Sumitomo Corp. of Am.*, No. 88- cv-700, 1991 WL 29112
    (S.D.N.Y. Feb. 22, 1991)................................................................................................23

**OTHER SOURCES:**

7B Charles A. Wright et al., Federal Practice and Procedure § 1803 (3d ed. 1998) .......................4

Clayton Act § 4, 15 U.S.C. § 15 ...................................................................................................19

Sara Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an Hour*,
    *The Wall Street Journal*, Feb. 16, 2016 ..............................................................................9

Morris and Morris LLC Counselors At Law and Weinstein Kitchenoff & Asher LLC (collectively "Class Counsel" ), for Plaintiffs Ellen Gelboim and Linda Zacher (collectively "Bondholder Plaintiffs"[1]) hereby respectfully move the Court for an award of attorneys' fees, the reimbursement of litigation expenses, and a service award for each Bondholder Plaintiff. This motion is filed in connection with the settlements between the Bondholder Plaintiffs and Barclays Bank plc ("Barclays"), UBS AG ("UBS"), HSBC Bank plc ("HSBC"), Citibank, N.A. and Citigroup Inc. (collectively "Citi"), JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively "JPM"), Bank of America Corporation and Bank of America, N.A. (collectively "BOA"), and the Royal Bank of Scotland Group plc ("RBS") (all together, the "Settling Defendants").[2]

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Settlement Agreements with the Settling Defendants.

[2] The Settlement Agreement between Bondholder Plaintiffs and Barclays (the "Barclays Settlement Agreement") was entered on November 15, 2016. The Settlement Agreement between Bondholder Plaintiffs and UBS (the "UBS Settlement Agreement") was entered on July 12, 2016. The Settlement Agreement between Bondholder Plaintiffs and HSBC ("the "HSBC Settlement Agreement") was entered on March 15, 2017.  The Barclays Settlement Agreement, the UBS Settlement Agreement and the HSBC Settlement Agreement were submitted to the Court as Exhibits 1, 3 and 4, respectively, to the Declaration of Karen L. Morris and Robert S. Kitchenoff in Support of Bondholder Plaintiffs Motion for Preliminary Approval, ECF. No. 1947-2. The Settlement Agreement between Bondholder Plaintiffs and Citi (the "Citi Settlement Agreement") was entered on January 10, 2018 and was submitted to the Court as Exhibit 1 to the Declaration of Karen L. Morris and Robert S. Kitchenoff in Support of Bondholder Plaintiffs Motion for Preliminary Approval, ECF. No. 2764-3. The Settlement Agreement between Bondholder Plaintiffs and JPM and BOA (the "JPM/BOA Settlement Agreement") was entered on November 12, 2019. The Settlement Agreement between Bondholder Plaintiffs and RBS (the "RBS Settlement Agreement") was entered on March 25, 2020. The JPM/BOA Settlement Agreement and the RBS Settlement Agreement were submitted to the Court as Exhibits 1 and 2, respectively, to the Declaration of Karen L. Morris and Robert S. Kitchenoff in Support of Bondholder Plaintiffs' Motion for Preliminary Approval, ECF. No. 3059-3 (all together, the "Settlement Agreements"). All references to docket entries in this memorandum are to Case No. 11-md-2262 (S.D.N.Y.).

## I.      INTRODUCTION

After more than eight years of hard-fought litigation on behalf of the Bondholder Class, Class Counsel have recovered a total of $68,625,000[3], as well as non-monetary relief for the benefit of the settlement classes defined in the Settlement Agreements (the "Settlement Classes"). Class Counsel request an award of attorneys' fees of 28% of the Settlement Funds, after deducting $2,498,977.39 in total expenses incurred to date (*see* Section III.A.2.b. below). The application is well within the range of awards found to be reasonable under Second Circuit precedents, aligns with awards regularly approved in comparable multi-defendant antitrust class actions, and will reward Class Counsel for the outstanding results they have obtained for the Bondholder Class,  after years of contentious litigation, undertaken  on a contingency fee basis.

Class Counsel additionally seek reimbursement of  $817,237.03 in unreimbursed litigation expenses Class Counsel expended on behalf of the Bondholder Class in connection with the prosecution of the Bondholder Action (*see* Section III.B. below). "[C]ourts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." ECF 2683, at 2 (alteration in original) (quoting *In re IMAX Sec. Litig.*, No. 06-cv-6128, 2012 WL 3133476, at *6 (S.D.N.Y. Aug. 1, 2012).

## II.     BACKGROUND

As discussed below and as described in greater detail in the Declaration of Karen L. Morris and Robert S. Kitchenoff in Support of Class Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Service Award for Bondholder Plaintiffs

---

[3] The $68,625,000 in settlement funds (the "Settlement Funds") comprise the following: $7,100,000 paid by Barclays; $17,900,000 paid by UBS; $11,100,000 paid by HSBC; $7,025,000 paid by Citi; $6,250,000 paid by JPM, $6,250,000 paid BOA; and $13,000,000 paid by RBS. Since initial funding, the settlement accounts have earned interest of $1,286,378.26.

("Counsel Declaration") filed herewith, Class Counsel have worked tirelessly in litigating the Bondholder Action from September 2011 to the present. The Counsel Declaration provides a description of this work over the course of the litigation, including, *inter alia*, drafting multiple pleadings, research and analysis in support of briefing before this Court, the Second Circuit, and the Supreme Court on motions to dismiss and other relief, work building a comprehensive factual record, and close coordination with consulting experts.  Class Counsel's efforts throughout the litigation underpinned their settlement efforts, which have resulted in the $68,625,000 in settlements presently before the Court.

In January 2016, almost four years after having filed the Bondholder Action[4], Class Counsel began settlement negotiations with Barclays and UBS. Over the following four years, Class Counsel, including under the auspices of a former federal judge, the Honorable Layn Phillips acting as mediator, entered into hard-fought and contentious settlement negotiations not only with Barclays and UBS, but also with HSBC, Citi, JPM, BOA and RBS. As the result of these arm's-length negotiations, Class Counsel have successfully created the aggregate Settlement Funds for the benefit of the Settlement Classes. These settlements (the "Settlements") also provide for additional valuable non-monetary relief in the form of cooperation by counsel for the Settling Defendants, which has assisted Bondholder Plaintiffs in the settlement process and in their continuing litigation against the non-settling defendants.

The Court preliminarily approved the Barclays, UBS and HSBC Settlements on July 5, 2017, ECF No. 2048.  The Court subsequently preliminarily approved the Citi Settlement on December 5, 2018, ECF No. 2769, and the JPM/BOA and RBS Settlements on May 5, 2020,

---

[4] Bondholder Plaintiffs' initial complaint, *Ellen Gelboim v. Credit Suisse Group AG, et seq.*, 12-cv-1025, was filed in the Federal Court for the Southern District of New York on February 9, 2012.

ECF No. 3081.  In addition, on June 16, 2020, the Court approved the joint notice program and preliminarily approved the Plan of Allocation, ECF No. 3102.

The Settlements are excellent results for the Settlement Classes. The $68,625,000 recovery, achieved by Class Counsel working on a wholly contingent basis, and incurring substantial litigation expenses on behalf of the Bondholder Class, merits the attorney's fee award, expense reimbursement, and Class Plaintiff award requested here.

## III.   ARGUMENT

### A.   The Fee Request is Fair and Reasonable.

#### 1.   Class Counsel Are Entitled to Fees from the Common Fund.

"[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This principle applies to class action settlements, including interim settlements. *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *9 (E.D.N.Y. Oct. 23, 2012) ("Where a class action settlement creates a common fund the plaintiffs' attorneys are entitled to a reasonable fee – set by the court – to be taken from the fund. Fees can be awarded based on an interim settlement fund.").

"The court's authority to reimburse the parties stems from the fact that the class action [device] is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles A. Wright et al., *Federal Practice and Procedure* § 1803 (3d ed. 1998).

> The purposes of the doctrine are to fairly and adequately compensate class counsel for services rendered; to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf; and to encourage skilled counsel to represent those who seek redress for injury inflicted on an entire class and thereby discourage future misconduct of a similar nature.

*Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 WL 10847814, at *14 (S.D.N.Y. Sept. 9, 2015); *see also Athale v. Sinotech Energy Ltd.*, No. 11-cv-05831, 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013) ("The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost.").

> **2.      The Requested Fee Is Fair and Reasonable Under the Percentage Method – the Method Preferred in the Second Circuit.**

> **a.      The Percentage Method is Preferred in the Second Circuit**.

The Second Circuit's preferred method for calculating a fair and reasonable attorneys' fee is to award "some percentage of the recovery as a fee." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The trend in this Circuit is toward the percentage method" because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (quoting *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)); *accord, In re BioScrip, Inc. Secs. Litig.*, No. 13-cv-6922 (AJN), 2017 WL 3208941, at *16 (S.D.N.Y. July 26, 2017) (noting that "the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases" (internal quotation marks omitted)); *In re Beacon Assocs. Litig.*, No. 09 Civ. 777 (CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9,  2013) (same);  *Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194(SAS), 2011 WL 671745, at *2 (Feb. 23, 2011) (same); *Johnson v. Brennan*, No. 10 Civ. 4712(CM), 2011 WL 4357376, at *14 (S.D.N.Y. Sept. 16, 2011) ("[C]ourts prefer the percentage method" of awarding attorneys' fees in class action cases.); *In re Initial Pub. Offering Secs. Litig.*, 671 F. Supp. 2d 467, 480 (S.D.N.Y. 2009) (same); *In re Marsh & McLennan Companies, Inc. Secs. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *14

(S.D.N.Y. Dec. 23, 2009) ("[T]he percentage method continues to be the trend of district courts in this Circuit and has been expressly adopted in the vast majority of circuits.").

This principle and preference hold equally true for interim fee awards drawn from partial settlements with one or more defendants in a multi-defendant action. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *9 (noting that "[f]ees can be awarded based on an interim settlement" and recounting the Second Circuit's "trend" of "utiliz[ing] the percentage method" with the lodestar/multiplier method as a cross-check).

### b.    The Requested Fee is Fair and Reasonable.

A fee of 28% of the net Settlement Funds is fair and reasonable and is well within the range regularly approved by courts in this Circuit and around the country. *See, e.g.*, *In re Intercept Pharm., Inc. Sec. Litig.*, No. 1:14-cv-01123-NRB, 2016 U.S. Dist. LEXIS 138413, at *3 (S.D.N.Y. Sep. 8, 2016) (Buchwald, J.) (awarding attorneys' fees of 28.63% of $55 million settlement fund before expenses with interest as "appropriate, fair, and reasonable under the 'percentage-of-recovery' method")*; In re BHP Billiton Secs. Litig., 2019 U.S. Dist. LEXIS 63598* (S.D.N.Y. Apr. 10, 2019) (Buchwald, J.) (awarding 30% of a $50 million settlement before expenses with interest); *In re Deutsche Telekom AG Secs. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (Buchwald, J.) (awarding attorneys' fees of 28% of the settlement fund ($120 million) before expenses with interest).[5]

---

[5] *See also In re Municipal Derivatives Antitrust Litig.,* No. 08-cv-2516 (S.D.N.Y. Dec. 14, 2012), ECF No. 2029 (awarding 33.3%, or $33 million of a $101 million settlement)*; In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at *15-*18 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement); *Citiline Holdings, Inc. v. iStar Fin., Inc.*, No. 1:08-cv-03612-RJS, slip op. at 1 (S.D.N.Y. Apr. 5, 2013) (awarding 30% of $29 million settlement); *In re Municipal Derivatives Antitrust Litig. ,* No. 08-cv-2516 (S.D.N.Y. Dec. 14, 2012), ECF No. 1744 (awarding 29%, or $23.3 million of an $81.6 million settlement)*; In re Sadia S.A. Sec. Litig.,* No. 08 Civ. 9528 (SAS), 2011 U.S. Dist.

Guided by the Court's fee decisions in this MDL, Class Counsel apply the 28% net of total expenses to date of $2,498,977.39, resulting in a requested fee of $18,515.286. Total expenses are comprised of $817,237.03 in unreimbursed expenses paid by Class Counsel (*see* Section III.B below. below), $1,306,740.36 paid from the Settlement Funds to date[6] and $375,000 sought for Epiq.[7] *See, e.g.*, ECF No. 2683 (recognizing  payment of fees net of expenses is "consistent with  notions of public policy"), ECF No. 2745 , ECF No. 2777 , ECF No. 3097 and ECF No. 3185. Net of expenses, the Settlement Fund totals $66,126,022.61, to which the 28% would then be applied. The requested fee is exclusive of interest earned on the Settlement Funds of $1,286,378.26.  *See also* Counsel Declaration, at ¶¶ 62-63.

The requested fee is consistent with contingent fees sophisticated corporate plaintiffs have agreed to in private antitrust litigation. *Id.* at ¶ 60 (negotiated fee agreement of 30% of the first $50 million of recovery and 29% and 30%, respectively, of the excess).

### c.    The Requested Fee is Reasonable under a Lodestar "Crosscheck".

The reasonableness of Class Counsel's requested fee is confirmed by the lodestar "crosscheck." The Second Circuit permits courts to utilize a lodestar "crosscheck" to test the

---

LEXIS 149107, at *12 (S.D.N.Y. Dec. 28, 2011) (awarding 30% of $27 million settlement); *City of Providence v. Aéropostale, Inc.*, 11 Civ. 7132 (CM), 2014 U.S. Dist. LEXIS 64517, at *60 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*; *Arbuthnot v. Pierson*, 607 Fed. Appx. 73 (2d Cir. 2015) (awarding 33% of $15 million settlement); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07–1827 SI, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013) (awarding attorneys' fees of 28.6% of a $1.08 billion settlement).

[6] A total of $1,306,740.36 has been paid out of the Settlement Funds pursuant to the terms of the Settlement Agreements to support notice and administration, including data acquisition and work with consulting experts and the claims administrator in connection with the development of a plan of allocation and the provision of notice and claims review.  *See* Declaration of Karen L. Morris and Robert S. Kitchenoff in Support of Bondholder Plaintiffs' Motion for Final Approval of Settlements (filed herewith), ¶ 28

[7] *See* Declaration of Cameron R. Azari Regarding Implementation of Notice Plan (filed herewith), at ¶ 31.

reasonableness of a percentage-based fee. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours each attorney or firm professional expended on the litigation by his or her current hourly rate and totaling the amounts for all timekeepers. Then, "a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). Ordinarily, "[t]he multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id*. (citing *Goldberger*, 209 F.3d at 47). "A district court relying on the cross-check approach need not 'exhaustively scrutinize[]' 'the hours documented by counsel.'" *In re BioScrip, Inc.*, 2017 WL 3208941, at *17 (quoting *Goldberger*, 209 F.3d at 50).

Class Counsel have spent 34,743.70 hours, representing a combined lodestar of $28,558,749.75, in prosecuting the Bondholder Action. Class Counsel made this investment in vigorously litigating the Bondholder Action over more than eight years, with no assurance either of payment for their services or recoupment of their out-of-pocket litigation expenses. The Counsel Declaration also sets forth the hours and lodestar of Goldstein & Russell P.C., who assisted Class Counsel in connection with the appellate practice in this litigation. *Id.*, at ¶ 59.

The requested fee represents a lodestar multiplier of less than 1.0. The negative multiplier further demonstrates the reasonableness of the percentage fee requested by Class Counsel. Multipliers approved by courts in this Circuit regularly range from two to six. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six."); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) ("Here, the resulting multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit.").

The crosscheck multiplier reflected here confirms the reasonableness of Class Counsel's requested fee.

Class Counsel's hourly rates are also reasonable. The time is billed based on Class Counsel's standard hourly rates. Counsel Declaration, ¶ 56; *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984))). Class Counsel's hourly rates are market rates for plaintiff and defense-side law firms of similar quality, litigating matters of similar magnitude. Sara Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an Hour*, *The Wall Street Journal*, Feb. 16, 2016 (surveying attorneys' fees "filings over the past three months in about two dozen bankruptcy cases" and finding that "[f]or lawyers at the very top of th[e] fields [of high-stakes litigation and appeals], hourly rates can hit $1,800 or even $1,950" and citing a 2011 article and observing that the increases in hourly rates "mak[e] the $1,000-an-hour legal fees that once seemed so steep look quaint by comparison").[8]

### d.   The *Goldberger* Factors Support the Requested Fee Award.

Under either the percentage method or the lodestar multiplier approach, the "'*Goldberger* factors ultimately determine the reasonableness of a common fund fee," *Wal-Mart*, 396 F.3d at 121. The *Goldberger* factors, which the Court weighs in its discretion, are:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

---

[8] https://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708.

*Goldberger*, 209 F.3d at 50 (citation omitted). Consideration of each of these factors confirms that the requested 28% fee, net of expenses, is  reasonable.

### (1)      Time & Labor Expended by Counsel (*Goldberger* Factor 1)

The first *Goldberger* factor – the "time and labor expended by counsel" – strongly supports approval of the requested fee. Class Counsel have spent a total of 34,743.7 hours prosecuting this case and, as discussed above, the resulting lodestar multiplier is less than one, and thus, firmly below the range approved by courts in this Circuit. The substantial time devoted to this litigation over more than eight years reflects the immense effort Class Counsel have exerted in prosecuting this case and is reasonable, particularly given the complex nature of this action. Class Counsel have, among other things:

º      Conducted an initial investigation of this case to develop the facts and legal theories that formed the basis of the allegations in the Bondholder complaint and drafted and filed the original complaint, the first amended complaint, and the proposed second amended complaint.

º      Defended the  first amended complaint  from two Rule 12(b) motions  to  dismiss filed by Defendants and from their opposition to the Bondholder Plaintiffs' motion for leave to file the proposed second amended complaint.

º      Performed legal research and wrote letters to the Court, *inter alia*, providing supplemental authority, seeking relief, addressing discovery requests and presenting scheduling issues.

º      Worked closely throughout the litigation, in connection with the development of legal analysis and the settlements, with consulting experts in economics and finance, and industry consultants.  Work with consulting experts was instrumental in developing studies and analysis to support the drafting of the complaints, arguments on appeal, and settlement negotiations.

º      Pursued two appeals of the dismissal of the Bondholder Plaintiffs' antitrust claims to the Second Circuit and obtained *certiorari* and successfully argued before the Supreme Court, in the process overturning unfavorable pre-existing Second Circuit law.

º      Reviewed and analyzed documents and audio tapes produced by Defendants, as well as trial transcripts and evidence from criminal trials both in the United States and the United Kingdom relating to LIBOR manipulation, documentation in connection with

regulatory settlements, testimony before the U.K. Parliament, production from the Bank of England and the Federal Reserve, and other publicly available information, and worked diligently to compile a comprehensive factual record in the case.

º   Successfully pursued discovery from third party brokers.

º   Investigated available data sources and worked with consulting experts to develop damages estimates which underpin work in the litigation and settlement efforts.

º   Worked closely with Bondholder Plaintiffs' consulting expert in reviewing and analyzing Defendants' transactional data, bid/ask data from Bloomberg and ICAP, and other available relevant data supporting the expert's regression analysis model, devised to calculate but-for values, and in developing an expert report supporting the model for settlement purposes.

º   Negotiated with Bloomberg Financial LP to obtain the Bloomberg Bulk Data[9] and worked closely in conjunction with the Claims Administrator, Bondholders' consulting experts and technical personnel from Bloomberg to format, analyze and properly interpret the this data to extract data relevant to claims administration in connection with the Settlements.

º   Created detailed mediation submissions, with relevant documentary support, based on Class Counsel's analysis and continual development of the factual record.

º   Participated in conferences and attended mediation sessions under the auspices of retired federal judge Layn Phillips.

º   Undertook arm's-length negotiations with multiple defendants, and successfully achieved settlements with Barclays, UBS, HSBC, Citi, JPM, BOA and RBS.

º   Successfully briefed motions for preliminary approval of the Settlements with Barclays, UBS and HSBC, with Citi, and with JPM/BOA and RBS.

º   Worked with consulting experts and the Claims Administrator to develop a Plan of Allocation and notice program, drafted the notice and Proof of Claim Form and forms of notice, successfully briefed a motion for approval of the comprehensive notice program, and closely supervised implementation of the notice plan approved by the Court.

---

[9] The Bloomberg Bulk Data was raw data acquired on behalf of the Bondholder Class from Bloomberg Finance LP that included information regarding, among other matters, CUSIP numbers of the relevant LIBOR-based debt securities issued and/or outstanding during the Class Period, whether (and if so, when) relevant debt securities defaulted or stopped paying interest during the Class Period, and other information directly relevant to determining if a putative Bondholder class member was damaged.  Counsel Declaration, ¶ 38.

For a more detailed discussion of the scope and nature of work undertaken by Class Counsel over the past nine years in connection with the litigation of the Bondholder Action, *see* Counsel Declaration, ¶¶ 9 through 55.

In sum, Class Counsel devoted substantial time and financial resources in prosecuting this case on behalf of the Bondholder Class.

> **(2)   Magnitude & Complexity of the Litigation (*Goldberger* Factor 2)**

The second *Goldberger* factor – "the magnitude and complexities of the litigation" – also strongly supports approval of the requested fee. No other case better embodies the challenges faced by plaintiffs in antitrust litigation than this one. *See Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2011) (noting the "factual complexities of antitrust cases"); *Wal-Mart*, 396 F.3d at 118 ("Federal antitrust cases are complicated, lengthy, and bitterly fought."); *In re Vitamin C Antitrust Litig.*,-2012 WL 5289514, at *4 ("Federal antitrust cases are complicated lengthy, and bitterly fought, as well as costly."). This action was initially filed over eight years ago and has undergone multiple rounds of briefing and been dismissed twice. Although Bondholder Plaintiffs' antitrust claim was reinstated by the Second Circuit in 2016, it is currently dismissed for a second time, with the appeal *sub judice* before the Second Circuit.  Should Bondholder Plaintiffs be successful on their currently pending appeal, they will face class certification. If successful at class certification, the Bondholder Plaintiffs will face the monumental task of completing merits discovery, including additional expert discovery, summary judgment briefing, and then trial from which the losing party will almost certainly appeal. In  spite of the significant resources already expended preparing this case for trial, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *Id.*

### (3)   Risk of the Litigation (*Goldberger* Factor 3)

The third *Goldberger* factor – the "risk of the litigation" – also strongly supports approval of the requested fee. The Second Circuit has identified "the risk of success as perhaps the foremost factor to be considered in determining [a reasonable fee award]." *Goldberger*, 209 F.3d at 54. Class Counsel have taken on and overcome significant risks in this litigation.

### (i)   Contingency Risk

The risk inherent in a contingent fee litigation has long been recognized as a major factor in the evaluation of a reasonable fee. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (identifying "the risk of the litigation (*i.e.*, the contingent nature of the fee)"). That risk arises from the moment counsel commit to bringing and maintaining the litigation and continues throughout until an actual recovery is made. As the Second Circuit recently explained,

> The plaintiff class is … appropriately charged for contingency risk where such risk is appreciable because the class has benefited from class counsel's decision to devote resources to the class's cause at the expense of taking other cases. That is, because class counsel has decided to represent the plaintiff class, class counsel's ability to freely represent other clients is limited by the risk she has assumed that the class's cause will be unsuccessful. The class, having been enriched by counsel's acceptance of its cause at the expense of other clients' causes, may be charged for counsel's assumption of risk on its behalf.

*Fresno County Emp'ees. Ret. Ass'n v. Isaacson*, 925 F.3d 63, 70 (2d Cir. 2019). Thus, "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Fleisher*, 2015 WL 10847814, at *21 (quoting *Grinnell.*, 495 F.2d at 470). Here, Class Counsel have invested 34,743.7 hours of time with a lodestar value of $28,558,749.75 without *any* guarantee they would be compensated for their efforts or reimbursed for any of the litigation expenses they have incurred. *See In re High-Crush Ptrs. L.P. Secs. Litig.*, 2014 WL 7323417, at *16 (S.D.N.Y. Dec. 19, 2014) ("Lead Counsel

13

undertook the representation of Lead Plaintiffs and the Class in this Action on a wholly

contingent basis, investing substantial time and funds to prosecute this Action, without any

guarantee of compensation or of recovering out- of-pocket expenses."); *Fleisher*, 2015 WL

10847814, at *21 ("[T]he firm would not have been compensated for its time or expenses at all

had it been unsuccessful in this litigation.").

Moreover, Class Counsel would not have been compensated for their time or expenses

at all had they been unsuccessful in this litigation. *See Grinnell*, 495 F.2d at 471 ("[D]espite the

most vigorous and competent of efforts, success is never guaranteed."); *In re Beacon Assocs.*

*Litig.*, 2013 WL 2450960, at *13 (S.D.N.Y. May 9, 2013) ("And all of these matters were taken

on contingency, so in view of the novelty of the issues there was some possibility that counsel

would recover nothing at all."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 366

(S.D.N.Y. 2002) ("The enormous risks of litigation are why settlement is frequently preferred.

Settling avoids delay as well as uncertain outcome . . . ."). The risk of no recovery in complex

class actions is real and supports the request by Counsel for the Settlement Classes.

Contingency risk takes on an additional layer in multi-defendant actions such as this

one, where class counsel's efforts in securing partial settlements with certain defendants

protect against the risk that there might *never* be any recovery from other defendants. Courts

recognize this dynamic when awarding fees – and cite it as a reason to *reward* class counsel for

the risk they take. For instance, in the *Online DVD Rental* case, plaintiffs settled with one

defendant for $27.25 million and then lost the entire case against the remaining defendant a few

months later, when the court granted that defendant's motion for summary judgment. *See In re*

*Online DVD Rental Antitrust Litig.*, No. 09-md-2029 (N.D. Cal. Sept. 2, 2011), ECF 492

(granting preliminary approval to settlement); *In re Online DVD Rental Antitrust Litig.*, 2011

14

WL 5883772, at *1 (N.D. Cal. Nov. 23, 2011) (granting motion for summary judgment). The court not only granted class counsel's fee request for 25% of the settlement fund, *see In re Online DVD Rental Antitrust Litig.*, No. 09-md-2029, slip op. ¶ 1 (N.D. Cal. Mar. 29, 2012), ECF 607, *aff'd*, 779 F.3d 934, 955 (9th Cir. 2015), but in fact, specifically cited the summary judgment order as one reason to approve the fee request as reasonable:

> At this time, I'm prepared to find that the settlement is fair, reasonable, and adequate given the totality of the circumstances, *particularly given the fact that half the case has been kind of wiped off the books for the plaintiffs*, I find that the settlement is fair, reasonable, and adequate, that something's better than nothing in this kind of case, and that *the bench mark is a reasonable fee* for this case. So I approve.

Transcript of Hearing, *In re Online DVD Rental Antitrust Litig.*, No. 09-md-2029 (N.D. Cal. Mar. 14, 2012), ECF 602 (emphasis added). In that case, class counsel's diligence in pursuing what turned out to be an unsuccessful claim was a compelling reason to *reward* them for the contingency risk they took on and *award* the requested fees from the recovery that class counsel *did* achieve. Although Class Counsel are confident in the merits of the Bondholder Class's claims against the non-settling defendants, there still remains significant contingency risk associated with those claims, given that at present they have been dismissed and depend upon a favorable appellate ruling to regain viability.  This circumstance counsels in favor of granting a generous fee award from the substantial and concrete recovery Class Counsel have obtained to date.

### (ii)    Liability Risk

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014). Throughout the more than eight years this case has been in litigation, Class Counsel have faced significant risks of establishing liability. Although they

15

believe in the merits of their case, over the course of the litigation, Bondholder Plaintiffs'
antitrust claims have twice been dismissed, and the current appeal is as yet unresolved. If
successful on their second appeal, it is not clear how a jury would respond to the Bondholder
Plaintiffs' claims or the defenses of the Settling Defendants at trial, should Bondholder Plaintiff
survive class certification and summary judgment. *See Sykes v. Harris*, 2016 WL 3030156, at
*18 (S.D.N.Y. May 24, 2016) ("Defendants asserted numerous novel defenses to Lead Plaintiffs'
claims which put recovery for Class Members and Class Counsel at risk."); *West Virginia v.
Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[N]o matter how confident one
may be of the outcome of litigation, such confidence is often misplaced."). The trial of the
underlying claims, moreover, would require extensive fact and expert testimony, and
regardless of outcome, the parties would be expected to pursue appeals from any result at trial.

### (iii)     Damages Risk

Equally as significant as the risks in establishing liability in this case are the
Bondholder Plaintiffs' risks in establishing damages. The damages estimates in this case are
heavily expert-driven, and, although Class Counsel are confident of their ability to prove
damages, the expected expert battle at class certification and the anticipated expert battle
ultimately at trial add substantial risk to the Bondholder Plaintiffs' claims. *See In re Flag
Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *18 (S.D.N.Y. 2010) (noting that the
burden in proving the extent of the class's damages weighed in favor of approving fee request,
and that "[t]he jury's verdict . . . would . . . depend on its reaction to the complex testimony of
experts, a reaction that is inherently uncertain and unpredictable"); *In re NASDAQ Market-
Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) (observing that "[d]amages at

trial would inevitably involve a battle of the experts" and noting that it is "difficult to predict with any certainty which testimony would be credited").

*      *      *

The only certainties from the outset of this litigation were that there would be no attorneys' fees or reimbursement of expenses without a successful result, and that a successful result, if any, could be achieved only after lengthy, difficult, and expensive effort.

### 4.      Quality of the Representation (*Goldberger* Factor 4)

The fourth *Goldberger* factor, "the quality of representation," also supports approval of the requested fee. Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Class Counsel respectfully submit that the $68,625,000 Settlement Fund is strong evidence of the quality of their representation, especially since that significant amount is being paid even though the Bondholder Plaintiffs' claims are dismissed and entirely dependent for reinstatement upon an unpredictable appeal.

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *Fleisher*, 2015 WL 10847814, at *22; *see also* Counsel Decl., Exhibits. 1 and 2. "The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work." *Fleisher*, 2015 WL 10847814, at *22. Courts recognize that the caliber of the opposition faced by plaintiffs' counsel aids assessment of the quality of the plaintiffs' counsel's performance. *See Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *2 (S.D.N.Y. June 1, 2012) (considering "the quality and vigor of opposing counsel"). All of the Settling Defendants are represented by skilled and highly

regarded counsel from some of the largest and most prestigious law firms in the United States, with well-deserved reputations for vigorous advocacy in the defense of complex civil cases, and this is true of the other defendants in this action as well. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d at 357–58 ("Lead Counsel obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country.").

### 5.   Requested Fee in Relation to the Settlement (*Goldberger* Factor 5)

The fifth *Goldberger* factor – "the requested fee in relation to the settlement" – also supports approval of the requested fee, as discussed *supra* at Sections A.1. and 2.

### 6.   Public Policy Considerations (*Goldberger* Factor 6)

Finally, the sixth *Goldberger* factor – public policy considerations – weighs heavily in favor of the requested fee. Public policy considerations strongly favor incentivizing skilled private attorneys to undertake class action litigation both to vindicate the rights of class members and the law enforcement function of private action litigation. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d at 359 ("[T]o attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."); *In re Sumitomo*, 74 F. Supp. 2d 393, at 399 (S.D.N.Y. 1999) ("[T]he Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation."). This is particularly so in antitrust cases, where Congress has expressed its intention to incentivize private enforcement actions by rewarding attorneys' fees and treble damages to successful

plaintiffs. *See* Clayton Act § 4, 15 U.S.C. § 15; *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139 (1968) ("The purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws."). As the Second Circuit has explained, "private enforcement depends on the willingness of affected [plaintiffs] to enter the fray and risk substantial money, time, and effort in lawsuits that have even more uncertainty of outcome than ordinary litigation." *Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 260 (2d Cir. 1989).

Those interests are particularly salient in this case, which has required a substantial investment of attorney time and expenses with no avenue for compensation for their services until more than eight years into the litigation. In order to incentivize the very best private attorneys to take on complex, lengthy, difficult, and expensive class actions, the fee awarded must be sufficient to justify the opportunity cost of foregoing hourly and fixed-fee cases where counsel are assured of compensation regardless of the outcome of the litigation at hand.

### B.   The Request for Reimbursement of Litigation Expenses Is Reasonable.

Class Counsel request reimbursement in the amount of $817,237.03 for out-of-pocket litigation expenses reasonably and necessarily incurred in connection with the prosecution of the Bondholder Action. *See* Counsel Declaration at ¶ 61. "[C]ounsel is entitled to reimbursement from the common fund for reasonable litigation expenses." *Athale*, 2013 WL 11310686, at *9; *See also Anwar*, 2012 WL 1981505, at *3 ("Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses." (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987))); *In re Vitamins Antitrust Litig.*, Case No. 99-197 (TFH), 2001 WL 34312839, at *13 (D.D.C. 2001)

("[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund . . . . Courts have routinely awarded expenses for which counsel would normally directly bill their clients.").

The expenses incurred by Class Counsel include, *inter alia*, fees charged by experts and consultants, database charges for hosting and review of documents produced in discovery, court fees, electronic research, printing costs, and travel in connection with this litigation. Courts regularly approve similar cost applications in large, complex class actions. *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *18 (S.D.N.Y. Apr. 26, 2017) (approving $10 million in expenses "[m]ost of" which "were incurred in connection with retention of experts" where the case settled just prior to the due date for class certification motions); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 438 (S.D.N.Y. 2016) (approving $7.5 million in expenses most of which were expert fees); *TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *16 (approving $8.7 million in expenses); *In re Bank of Am. Corp. Secs., Derivatives & ERISA Litig.*, 2013 WL 12091355, at *1 (S.D.N.Y. Apr. 8, 2013) (approving $8 million in litigation expenses); *In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 380 (S.D.N.Y. 2013) (approving $7.3 million in litigation expenses); *In re Initial Pub. Offering Secs. Litig.*, 671 F. Supp. 2d at 505 (approving $46 million in expenses).

The majority of the expenses for which Class Counsel seek reimbursement are related to experts and work with the Mediator. The expert expenses were key to engaging experts of exceptional skill, experience, and integrity in supporting, *inter alia*, the development of the legal claims, understanding the functioning of the LIBOR market and the market for debt securities, and in developing theories and analysis to support allegations of conspiracy and suppression.. The mediator expenses were critical in successfully negotiating the Settlements.

Indeed, "[t]he fact that Class Counsel [were] willing to [incur these expenses], where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Fleisher*, 2015 WL 10847814, at *23.

Separately, Class Counsel seek reimbursement on behalf of Epiq in the amount of $375,000 Epiq paid in connection with the acquisition of the Bloomberg data. *See* Azari Declaration, at ¶ 31.

**C.     Service Awards for the Named Plaintiffs Are Appropriate.**

Class Counsel also seek incentive awards of $25,000 each for Bondholder Plaintiffs Ellen Gelboim and Linda Zacher, as stated in the notice. "Courts consistently approve awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they endure during litigation." *Anwar,* 2012 WL 1981505, at *3.

The Bondholder Plaintiffs provided invaluable service to the class by, for example, providing evidence to assist in the development of the Bondholder Plaintiffs' claims, responding to questions from counsel about documents and data provided, attending the hearing of the matter in the U.S. Supreme Court, staying actively apprised of pleadings, briefing and evolving settlement negotiation, and approving terms and conditions of the Settlements. Providing this service to the class required the Bondholder Plaintiffs to dedicate time and resources. Indeed, the Bondholder Plaintiffs' continued faith in, and dedication to the Bondholder Action even after the repeated dismissal of their claims by the Court was essential in securing the Settlements. Courts routinely approve service awards to class representatives who provide these types of services to a class. *See, e.g.*, *Sewell*, 2012 WL 1320124, at *15 (approving incentive awards where the named plaintiffs "served class members by providing counsel with relevant documents in their

possession, assisting counsel to prepare for the mediation, participating in litigation strategy, and reviewing and commenting on the terms of the settlement. (internal quotation marks omitted)).

Courts have approved similar and higher incentive awards in numerous cases. *See, e.g.*, *Anwar*, 2012 WL 1981505, at *4 (awarding $25,000 to class representative); *Duchene v. Michael Cetta, Inc.,* No. 06-cv-4576, 2009 WL 5841175, at *9 (S.D.N.Y. Sept. 10, 2009) (awarding $25,000, representing 0.8% of $3,150,000 settlement amount); *Dornberger v. Metro. Life Ins. Co*., 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case law supporting payments of between $2,500 and $85,000 to representative plaintiffs in class actions); *Yap v. Sumitomo Corp. of Am.*, No. 88- cv-700, 1991 WL 29112, at *9 (S.D.N.Y. Feb. 22, 1991) ($30,000 incentive awards to each of the named plaintiffs). This Court has granted service awards in the amount requested in other settlements in the LIBOR MDL. *See, e.g.*, ECF No. 2683, p. 5; ECF No. 2777, p. 12.

It is respectfully submitted that the Court should grant incentive awards of $25,000 to each of the Bondholder Plaintiffs.

## IV.   CONCLUSION

For the foregoing reasons, Counsel for the Settlement Classes respectfully request the Court award the requested attorneys' fees of 28% of the net Settlement Funds, in the amount of $18,515,286, reimbursement of litigation expenses in the amount of $817,237.03, service awards of $25,000 to each of the two Bondholder Plaintiffs and reimbursement of $375,000 to Epiq.

Dated: November 2, 2020

Respectfully submitted,

*/s Karen L. Morris*                         */s Robert S. Kitchenoff*

Karen L. Morris (Bar No. 1939701)           David H. Weinstein
Patrick F. Morris                           Robert S. Kitchenoff
MORRIS AND MORRIS LLC                       WEINSTEIN KITCHENOFF & ASHER LLC
    COUNSELORS AT LAW                       150 Monument Road, Suite 107
4023 Kennett Pike, #254                     Bala Cynwyd, PA  19004
Wilmington, DE  19807                       Tel.: (215) 545-7200
Tel.: (302) 426-0400                        Email:  weinstein@wka-law.com
Email: kmorris@morrisandmorrislaw.com               kitchenoff@wka-law.com
        pmorris@morrisandmorrislaw.com

*Attorneys for Plaintiffs*
*Ellen Gelboim and Linda Zacher*

Of Counsel:
Thomas C. Goldstein
Eric F. Citron
Goldstein & Russell, P.C.
7475 Wisconsin Avenue, Suite 850
Bethesda, MD 20814
(202) 362-0636

23